**LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**The HOME INSURANCE COMPANY, Defendant.**

**Civ. No. 76-1028.**

United States District Court, M. D. Pennsylvania.

May 20, 1977.
As Amended July 12, 1977.

Hugh J. McMenamin, Scranton, Pa., for plaintiff.

John W. Bour, Scranton, Pa., for defendant.

## OPINION

MUIR, District Judge.

On May 9, 1977, the parties in the above-captioned case filed a statement of undisputed facts. On the same date, Defendant Home Insurance Company filed its trial brief. On May 10, 1977, Plaintiff Liberty Mutual Insurance Company submitted its trial brief. On May 11, 1977, the matter

came on for trial and both parties rested without the presentation of evidence, agreeing that the matter be presented to the Court as a case stated. Except for paragraphs 16 through 18 which are matters of record, the following undisputed facts are presented in the precise wording of the joint submission by Liberty and Home.

## I. Findings of Fact.

1. The Plaintiff is, and at all times herein mentioned was, engaged in the insurance business and registered to do business in the Commonwealth of Pennsylvania, with a place of business in the South Main Towers, Wilkes-Barre, Pennsylvania.

2. The Defendant is, and at all times herein mentioned was, engaged in the insurance business and registered to do business in the Commonwealth of Pennsylvania, with a place of business at 400 Orchard Street, Scranton, Pennsylvania, and at the Public Ledger Building, Philadelphia, Pennsylvania.

3. On December 16, 1969, and at all times herein mentioned, Frank Novitch of Nicholson, Pennsylvania, was engaged in the business of hauling bulk milk from points of origin in Pennsylvania and New York State to points of distribution in New Jersey.

4. On December 16, 1969, and at all times herein mentioned, Farmland Fairlawn Dairies (hereinafter called Farmland), was a New Jersey corporation engaged in the business of buying raw milk, processing and selling it wholesale and retail. Its principal place of business was in Fairlawn, New Jersey.

5. On December 16, 1969, one Lawrence Warner, who was employed by said Frank Novitch, was operating a tractor which was hauling a tank-trailer on U.S. Routes 6 and 11, Factoryville, Pennsylvania, when the tractor-trailer unit collided with a pick-up truck owned and being operated by one Joseph Surowiec, R.D. # 2, Clarks Summit, Pennsylvania, causing personal injuries to Joseph Surowiec.

6. The tractor was owned by Frank Novitch. The tank-trailer, which contained a cargo of milk, was owned by Farmland. Farmland had entered into a contract with Novitch under which the latter with his tractor was to transport the cargo of milk. At the time of the accident the cargo of milk was being hauled by the tractor.

7. On March 1, 1969, the Plaintiff issued to Farmland an insurance policy, which policy was in full force and effect on December 16, 1969, the time of the accident.

8. On January 10, 1967, the Defendant issued to Farmland an insurance policy, Number 9–55–62–29, which policy was in full force and effect on December 16, 1969, at the time of the accident.

9. At the time of the accident, there was in full force and effect a certain policy of automobile liability insurance issued by the Exchange Mutual Insurance Company to Frank Novitch, with limits of $100,000.00.

10. On November 10, 1970, Surowiec instituted suit in the United States District Court for the Middle District of Pennsylvania (Civil Action No. 70–552) against Farmland, claiming damages of personal injuries resulting from the accident described above. On the same date, Surowiec instituted a companion action in the Court of Common Pleas of Wyoming County, Pennsylvania, No. 209 September Term 1971, against said Frank Novitch and said Lawrence Warner and Farmland, claiming the same damages claimed in said Federal action. Attorney Hugh J. McMenamin was retained by the Plaintiff to defend Farmland and Attorney James P. Harris, Jr., was retained by said Exchange Mutual Insurance Company to defend said Frank Novitch and said Lawrence Warner.

11. On the 23rd day of February, 1972, said Federal action came on for trial before Judge Malcolm Muir and a jury with the issues of liability and damages befurcated (sic). On the 29th day of February, 1972, the jury returned a verdict on the liability phase in the form of answers to eleven interrogatories. Inter alia, the jury found Lawrence Warner, the operator of the tractor, to have been the joint servant of Frank Novitch and Farmland and that the acci-

dent was caused by negligence in the operation of the tractor-trailer unit.

12. Thereafter and before the issue of damages was decided by the jury, the parties to the action agreed upon a settlement whereby the sum of $225,000.00 was to be paid to the Plaintiff.

13. It was agreed by and among the Plaintiff, the Defendant and Exchange Mutual Insurance Company that the first $100,000.00 of the $225,000.00 settlement should be paid by Exchange Mutual Insurance Company. There was a dispute between the Plaintiff and the Defendant as to how or which company should pay the balance of the settlement, or $125,000.00. The Plaintiff contended $100,000.00 of the $125,-000.00 should be paid by the Defendant. The Defendant contended $100,000.00 of the $125,000.00 should be paid by the Plaintiff and only $25,000.00 paid by the Defendant. Thereupon, it was agreed between the Plaintiff and the Defendant that $100,-000.00 of the balance would be paid by the Plaintiff and $25,000.00 of the balance would be paid by the Defendant without prejudice to either the rights of the Plaintiff or the Defendant and that the questions of coverage involved and the exact amount or amounts the Plaintiff and the Defendant should have contributed toward the settlement would be adjudicated in a subsequent declaratory judgment proceeding.

14. Thereupon settlement was consummated in accordance with the agreement and Exchange Mutual Insurance Company paid $100,000.00; the Plaintiff paid $100,-000.00 and the Defendant paid $25,000.00 and the action was dismissed with prejudice March 6, 1972.

15. Said settlement included settlement of all claims set forth in said Wyoming County action and on March 6, 1972, said Wyoming County action was discontinued with prejudice.

16. The policies referred to in agreed facts 7 and 8 above, a release executed by Joseph Surowiec, the jury's answers to the special verdict questions in Civil No. 70–552, and a transcript of certain settlement discussions conducted in the presence of the Court in No. 70–552 are a part of the record as joint exhibits of the parties.

17. Liberty is a Massachusetts corporation with its principal place of business in Boston.

18. Home is a New York corporation with its principal place of business in New York City.

## II. Discussion.

On December 16, 1969, a pick-up truck driven by Joseph Surowiec collided with a tank-trailer operated by Lawrence Warner on U.S. Routes 6 and 11 in Factoryville, Pennsylvania. Litigation ensued in which Surowiec, after a jury verdict on liability favorable to him, on February 29, 1972, but prior to a verdict on damages, entered into a $225,000 settlement. *Surowiec vs. Farmland Fairlawn Dairies*, M.D.Pa., Civil No. 70–552. Although Surowiec's claim was satisfied, the hybrid composition of the tortfeasor, see agreed facts 5 and 6 above, engendered a dispute between Liberty and Home, two of the three contributing insurance companies.

Farmland owned the tank-trailer and its cargo. The tractor to which the trailer was attached belonged to Frank Novitch, who had hired Warner to operate the rig. In response to special verdict questions, the jury found, *inter alia*, that Warner was negligent and that he was an agent of both Farmland and Novitch.

Exchange Mutual Insurance Company, Novitch's automobile liability insurance carrier, contributed $100,000 to the settlement fund and is not embroiled in the controversy between Liberty and Home.

At the time of the Surowiec accident, Farmland was covered by an "AUTOMOBILE POLICY Combination Comprehensive (Comprehensive Liability—Physical Damage)" issued by Liberty. Section I entitled "Comprehensive Liability Insurance", obligated Liberty to " . . . pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of Coverage A bodily injury or Coverage B property damage to which

this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use. . . . of *any* automobile. . . ." The policy defines "automobile" to include a trailer. Section I also provided "excess insurance" to protect Farmland from liability with respect to a "hired automobile or a non-owned automobile" over any other insurance available to the insured. The policy imposed a $100,000 per person limitation on Section I's bodily injury payments—a limitation which encompassed the "excess" as well as the "primary" protection delineated in that Section. As one of Farmland's insurers, Liberty contributed $100,000 to the Surowiec settlement fund, but expressly reserved the right to arbitrate or litigate the precise extent of its liability vis à vis Home.

At the time of the Surowiec accident, a "MANUSCRIPT EXCESS LIABILITY POLICY" issued by Home in favor of Farmland was also in effect. With respect to bodily injury arising out of an automobile accident, this policy provided Farmland with insurance for liability exceeding $100,000 per person. As another of Farmland's insurers, Home paid the remaining $25,000 to the Surowiec settlement fund acknowledging that Liberty disputed the relative amounts owed by the two companies.

Liberty contends that its liability in this case arises solely from the excess insurance clause of Farmland's policy and that, consequently, it and Home are dual excess insurance carriers who should equally share the $125,000 paid to Surowiec over and above the $100,000 contributed by Exchange Mutual. The Court does not agree.

■ Liberty focuses on the status of the tractor which collided with Surowiec. Since the driver was not an "insured" as defined by the policy, since the tractor was a "non-owned automobile" and since Novitch's Exchange coverage could be viewed as other insurance available to Farmland, the jury's special verdict did impose liability on Farmland in such a way as to trigger the excess insurance provision of the Liberty policy. However, the Novitch tractor did not "act" alone, but had attached to it the Farmland trailer. Consequently, Farmland's liability to Surowiec also stemmed from the "ownership . . . [and] use . . . of any automobile . . ." and was therefore covered, in the first instance, by the primary provisions of its Liberty policy. *Manufacturers Casualty Insurance Company vs. Goodville Mutual Casualty Insurance Company*, 403 Pa. 603, 606–608, 170 A.2d 571 (1971); *Aetna Casualty Insurance vs. Ocean Accident Insurance Company*, 386 F.2d 413, 415 (3d Cir. 1967). By virtue of its very definition, the excess coverage would become available only after the primary insurance available to Farmland had been exhausted. Because Farmland's primary coverage was depleted only after the settlement fund reached the $200,000 mark, Liberty's "excess" obligation relates only to the remaining $25,000. Of course, since Section I has a per person bodily injury limitation of $100,000, Liberty could not be required to participate with Home in the payment of the $25,000 "excess".

To support the contention that the Surowiec accident triggered only the excess aspect of the Farmland policy, Liberty alleges that the trailer was uninsured and cites its omission from the list of "covered automobiles" in the policy's "Declarations" attachment—an interpretation which, if correct, directly contradicts the apparently unambiguous "*any* automobile" language of Section I quoted above. Although insurance policies are notorious for their now-you-see-it-now-you-don't qualities, Farmland's coverage, at least with respect to this matter, is not so elusory. The enumeration of "covered automobiles" refers only to Section II of the policy, "Automobile Physical Damage Insurance", and not to the comprehensive provided by Section I. Consequently, the trailer's absence from that list is irrelevant to this case which involves a personal injury claim.

By reason of our conclusion that Liberty was not a joint excess carrier with Home, the Court need not determine what the respective contribution of each such insurer should be. As a primary carrier for Farmland under the circumstances of the *Surow-*

*iec* case, Liberty properly paid its full $100,-000 primary obligation into the settlement fund.

Based on its analysis of the policy issued by Liberty to Farmland, the Court makes the following Conclusions of Law.

### III. Conclusions of Law.

1. The insurance coverage provided to Farmland by Liberty in the circumstances of the *Surowiec* case devolved from the primary aspects of the March 1, 1969 policy, not from its excess insurance clause.

2. Home's obligation to provide excess coverage to Farmland arose only after the payments by Liberty and Exchange Mutual.

3. Liberty is not entitled to reimbursement from Home for any portion of its $100,000 contribution to the settlement paid to the Plaintiff in *Surowiec vs. Farmland Fairlawn Dairies*, M.D.Pa., Civil No. 70–552.

In the light of the foregoing, an appropriate order directing entry of judgment in favor of Home will issue.