**CONTRANS, INC., David J. Early and St. Paul Fire and Marine Insurance Company, Appellants in 87–3033**

v.

**RYDER TRUCK RENTAL, INC., Old Republic Insurance Company, A–1 Disposal, Inc., Charles R. Toney and American Universal Insurance Company,**

**Appeal of RYDER TRUCK RENTAL, INC. and Old Republic Insurance Company.**

Nos. 87–3006, 87–3033.

United States Court of Appeals, Third Circuit.

Argued July 7, 1987.

Decided Dec. 31, 1987.

Rehearing Denied Jan. 27, 1988.

---

**4.** FELA actions may be brought only against railroads who are "common carriers." 45 U.S. C. § 51 (1982).

Mark E. Mioduszewski (argued), Knox, Graham, McLaughlin, Gornall and Sennett, Inc., Erie, Pa., for appellees.

* Honorable Maryanne Trump Barry, United States District Judge for the District of New

Edward L. McCandless, Jr. (argued), Steinberg & Girsh, P.C., Philadelphia, Pa., for appellants.

Before HIGGINBOTHAM and BECKER, Circuit Judges and BARRY, District Judge *.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal and cross appeal from the grant of summary judgment by the district court in a declaratory judgment action between two insurance companies requires us to determine whether an insurance policy term constitutes an "escape" clause. Generally, courts will not give effect to escape clauses and will instead render the would-be escaper's coverage primary. The appeals also require us to resolve a second coverage dispute that turns on whether two competing coverages are primary or excess. Jurisdiction is founded upon diversity of citizenship, 28 U.S.C. § 1332 (1982).

The two insurance carriers, appellant Old Republic Insurance Company and appellee St. Paul Fire and Marine Insurance Company, issued insurance policies that provided coverage on a tractor and trailer that became involved in an accident with another tractor-trailer. The owner and driver of the other rig sued Old Republic's and St. Paul's insureds. The district court granted summary judgment for St. Paul, declaring that a provision of the liability policy issued to Ryder Truck Rental by Old Republic is an escape clause, so that under Pennsylvania law Old Republic is primarily liable. *Contrans, Inc. v. Ryder Truck Rental*, 648 F.Supp. 1461 (W.D.Pa.1986). Old Republic and Ryder have appealed that adverse judgment. St. Paul has cross-appealed the district court's denial of its request that Old Republic bear the costs of the declaratory judgment suit.

We affirm the judgment in St. Paul's favor, although we expressly reject the reasoning of the district court. We hold that the Old Republic policy does not contain an

Jersey, sitting by designation.

escape clause, but that because St. Paul only contracted to provide excess insurance on the trailer, Old Republic under the terms of its policy must incur primary liability. Only if the limits of the Old Republic policy are exceeded will St. Paul be required to share in any loss. With respect to the cross appeal, we affirm the district court's denial of St. Paul's request for an award of costs and expenses.

## I.

The facts are not disputed. On December 12, 1983, a collision occurred on Interstate Route 80 in Clearfield County, Pennsylvania between two tractor-trailer rigs, one driven by Charles R. Toney and the other by David J. Early. The owner and driver of the Toney rig sued the owners and driver of the Early rig. All of the parties to this action are involved in that damage suit, which is still pending in the United States District Court for the Western District of Pennsylvania, either as named defendants or as their insurance carriers.

At the time of the accident, the tractor driven by Early was owned by Ryder and leased to Contrans, Inc.[1] Attached to the tractor was a trailer owned and leased to Contrans by Chancellor Leasing Corporation.[2] Pursuant to its lease, Ryder obtained insurance from Old Republic on the tractor and trailer with a combined single limit of $500,000 per occurrence. Contrans obtained liability coverage on the trailer in the same amount from St. Paul. Early operated both the tractor and trailer pursuant to an agreement between Driver's Pool, Inc., Early's employer, and Contrans. Early

1. More specifically, the tractor was owned by Ryder and leased to Erving Paper Mills, a Massachusetts corporation. Erving Paper then assigned its rights to Contrans, its corporate affiliate.

2. Actually, the trailer was leased by Chancellor to Erving Paper which transferred its rights to Contrans. However, neither this factual distinction nor the one noted *supra* n. 1 is important to the case.

3. Since this action was filed in a Pennsylvania district court, this Court's choice of law is governed by the choice-of-law rules of Pennsylvania. *Klaxon Co. v. Stentor Electric Mfg. Co.,*

ly was a permissive user of both components of the rig when the collision occurred.

In the wake of the Toney suit, St. Paul initiated a declaratory judgment action in the same district court, seeking a determination that the liability coverage it provided to Contrans on the trailer was excess to the primary coverage issued by Old Republic. Old Republic responded that the two policies were in effect both primary and, consequently, should contribute on a pro rata basis. As we have already explained, the district court granted summary judgment for St. Paul, declaring that the Old Republic policy contained an "escape" clause, and hence, that Old Republic's coverage was primary and St. Paul's coverage excess.[3]

## II.

Neither St. Paul nor Old Republic denies the applicability of its policy to the accident. Only the order in which the policies apply is disputed.

It is an accepted principle of insurance law that where an accident arises out of the use of a combined vehicle such as a tractor-trailer and where separate policies cover the tractor and the trailer, all insurance applicable to the combined vehicle comes into play, regardless of which part of the rig was physically involved in the accident. *See, e.g., Blue Bird Body Co. v. Ryder Truck Rental, Inc.,* 583 F.2d 717, 726–27 (5th Cir.1978) (holding that both tractor policy and trailer policy apply, no matter which component was actually involved in the accident, citing cases from

313 U.S. 487 (1941). Applying these principles, the district court determined and the parties agreed that Massachusetts law should apply; however, no applicable Massachusetts precedent could be uncovered. The district court, following *Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1308 (3d Cir.1978), thereupon presumed the law of Massachusetts to be the same as that of Pennsylvania, and accordingly applied Pennsylvania law. The parties to this appeal have acceded to this approach, hence this opinion also applies the law of Pennsylvania.

various jurisdictions); *Insurance Co. of North America v. Royal Indemnity Co.,* 429 F.2d 1014, 1017–19 (6th Cir.1970) (trailer policy applies merely because trailer was in use at time of accident); *Liberty Mutual Insurance Co. v. Home Insurance Co.,* 432 F.Supp. 117, 120 (M.D.Pa.1977) (same). In other words, coverage variously on the tractor or the trailer is merely a means of attaching insurance to the rig.

Thus both Old Republic and St. Paul necessarily concede the applicability of their policies to this accident. Nevertheless, each policy contains an "other insurance" clause purporting to declare the respective liabilities of the two insurers. As is explained in *Insurance Co. of North America v. Continental Casualty Co.,* 575 F.2d 1070, 1072 (3d Cir.1978), there are three general types of "other insurance" clauses—excess, pro rata and escape. Excess insurance "kicks in" to provide additional coverage once the policy limits of other available insurance are exhausted. Pro rata provisions allocate financial responsibility between concurrent policies based upon the percentage of coverage each policy bears to the net amount of coverage under all applicable policies. An escape clause attempts to release the insurer from all liability to the insured if other coverage is available. Finding it unacceptable for an insurance company to provide no coverage under a policy for which it received premiums, the courts of Pennsylvania have treated escape clauses with disfavor. In *Grasberger v. Liebert & Obert, Inc.,* 335 Pa. 491, 6 A.2d 925 (1939), the Pennsylvania Supreme Court held that when an escape clause of one policy conflicts with an excess clause of another policy, the escape clause will not be recognized and the primary loss will be borne by the company seeking to escape its liability.

Under Pennsylvania law, an "escape" clause is one that provides that "the company invoking it is relieved from *any* obligation to the insured if other coverage is available." *Insurance Co. of North America v. Continental Casualty Co.,* 575 F.2d

at 1072 (emphasis added). An insurance policy is a contract, and therefore, as with any contract, a provision of it must be read in the context of the policy as a whole. *Monti v. Rockwood Insurance Co.,* 303 Pa.Super. 473, 450 A.2d 24, 26 (1982); *Restatement (Second) of Contracts* § 202(2) (1981). Mere use of the magic words "shall not apply" does not necessarily create an escape clause. Given the rigor with which Pennsylvania law treats escape clauses, we must be careful not to label a limiting clause as an escape clause unless it truly provides a complete escape from liability to the insured. *See, e.g., Maryland Casualty Co. v. Horace Mann Insurance Co.,* 551 F.Supp. 907, 910 (W.D.Pa.1982), *aff'd mem.,* 720 F.2d 664 (3d Cir.1983) (because no attempt is made to escape liability entirely, court refuses to read clause as an escape clause).

The interpretation of an insurance policy when the facts are not in dispute is a question of law for the court. *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 760 (3d Cir.1985); *Young by Young v. Equitable Life Assurance Society,* 350 Pa.Super. 247, 504 A.2d 339, 341 (1986). In making the requisite determination we must look to the language of the applicable policies. *See, e.g., Commercial Union Insurance Co. v. Pittsburgh Corning Corp.,* 789 F.2d 214, 217 (3d Cir.1986). Against this background discussion, we turn first to the language of the Old Republic policy.

### III.

#### A.

It is undisputed that the question at issue here is the proper scope of the limitation of coverage clause found in Endorsement # 19 of the Old Republic policy. That endorsement provides:

> The insurance coverage to such lessee/renter applies only to the maintenance or use of (1) the automobile[4] so leased/rented and (2) trailers owned by

---

**4.** The word "automobile" is elsewhere defined in the policy to include any "land motor vehicle," and thus includes the Ryder tractor.

the lessee/renter or for which he is legally liable, but only while attached to the leased/rented automobile, however, such insurance *shall not* apply if there is other coverage applicable to the trailer and available to the lessee/renter (emphasis in original).

The assessment of the extent of coverage provided by Old Republic is initially dependent upon the proper referent of "such insurance" as it appears in subsection (2) of Endorsement # 19.

Old Republic argues that "such insurance" designates only the insurance it may extend to the trailer. Under that interpretation, the primary coverage provided by Old Republic on the tractor under subsection (1) is unaffected. As such, Old Republic denies that it is trying to walk away from or "escape" coverage. Rather, it acknowledges coverage on the rig (through coverage on the tractor), denying coverage only on the trailer *qua* trailer. Conversely, St. Paul urges that the correct antecedent of "such coverage" must be the phrase "insurance coverage," which appears in the first line of Endorsement # 19. Applying this interpretation, Old Republic's coverage on both the tractor and the trailer ceases to apply, thereby releasing Old Republic from any obligation to the insured when there is other insurance on the trailer.

The district court held that Endorsement # 19 was an escape clause based upon its finding that the limiting words (*"shall not* apply") of subsection (2) refer to coverage on both the tractor and the trailer. Since, according to its terms, the St. Paul policy is excess, the district court concluded that the two policies create a situation analogous to that in *Grasberger* whereby an escape clause of one policy conflicts with an excess clause of another. In reaching this conclusion, the court was persuaded by the "plain and unambiguous language of Endorsement # 19"—"such insurance *shall not* apply if there is other coverage applicable to the trailer"—that Old Republic was seeking to avoid primary responsibility, and that therefore Old Republic should in fact bear the primary loss. 648 F.Supp. at 1464.

We disagree. We conclude that the limiting clause applies only to Old Republic's extension of coverage to the trailer; that Old Republic's primary coverage on the tractor remains intact, and it remains liable to the insured for up to $500,000, the maximum coverage as stated in the policy; that Endorsement # 19 does not eliminate any coverage on the tractor; and that, *a fortiori*, it does not eliminate all coverage on the insured, hence Old Republic is not escaping its obligation.

As we read the policy, "such insurance" naturally refers only to subsection (2)—the insurance on the trailer. It is true that the beginning of the endorsement refers generally to the insurance coverage provided under the policy. However, the use of (1) and (2) creates a division in the flow of the sentence. There is nothing in the punctuation or choice of words ("..., however, such insurance....") that indicates to us a departure from the division that was created. Consequently, "such insurance" and the limitation which follows it refer back to the subject of subsection (2), namely the insurance on the trailer. Though we believe that a common sense reading of both Endorsement # 19 and the Old Republic policy in its entirety yields this result, several principles of grammatical or contractual interpretation also support our reading.

### B.

There is a principle known as the rule of the last antecedent, which states that "a limiting clause in a policy is to be confined to the last antecedent unless the context or evident meaning requires a different construction." 13 Appleman, *Insurance Law and Practice*, § 7387 at 181–82 (1976). *See also Black's Law Dictionary*, Fifth Edition, p. 794. In *Equitable Gas Co. v. City of Pittsburgh*, 507 Pa. 53, 488 A.2d 270 (1985), the court recognized this rule as the accepted method of statutory construction. Appellant in that case argued that the limiting clause "act[ed] as a gloss upon the entire section." 488 A.2d at 273. The court rejected that argument, choosing instead to "adhere to the accepted principle of English grammar, 1 Pa.C.S. § 1903(a),

which states that unless plainly meant otherwise a modifying clause operates only upon the phrase preceding it." *Id.* *See also Chestnut Hill & Spring House Turnpike Road Co. v. Montgomery County,* 228 Pa. 1, 76 A. 726, 727 (1910) ("a limiting clause or phrase, following several expressions to which it might be applicable, [is] to be restrained to the last antecedent") (quoting *Endlich on Interpretation of Statutes,* §§ 2, 414). This principle of statutory construction was extended to the interpretation of an employees' group life insurance policy in *Buntz v. General American Life Insurance Co.,* 136 Pa.Super. 284, 7 A.2d 93, 95 (1939).

We recognize that the rule of the last antecedent is not a rigid, exceptionless rule, but is rather an "aid to discovery of intent." *Midboe v. State Farm Mutual Automobile Insurance Co.,* 495 Pa. 348, 433 A.2d 1342, 1343 (1981) (plurality opinion) (quoting *Commonwealth v. Rosenbloom Finance Corp.,* 457 Pa. 496, 325 A.2d 907, 909 (1974)). In *Midboe,* the plurality [5] found that a phrase within a subsection of a statute modified all of the terms in that subsection.[6] Responding to the dissent's suggestion that the plurality had rejected the last antecedent rule, the plurality stated that "[w]hen several [i.e., a string of] words are followed by a [modifying phrase] which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the [modifying phrase] be read as applicable to all." 433 A.2d at 1347 (quoting *Rosenbloom Finance,* 325 A.2d at 909). Here, however, we deal not with a string of words but with two subsections, the latter of which is followed by a limiting phrase.[7]

Application of the rule of the last antecedent yields the conclusion that the conditional exclusion *"shall not apply ..."* modifies only subsection (2) of Endorsement # 19.

### C.

A second rule of construction is that where there is ambiguity in an insurance policy, such ambiguity should be construed in favor of the insured and against the drafter of the policy.[8] *Motley v. State Farm Mutual Insurance Co.,* 502 Pa. 335, 466 A.2d 609, 611 (1983) ("if we should err in determining the meaning of an insurance policy provision ..., our error should be in favor of coverage for the insured") (citation omitted). The words "shall not apply" clearly were intended to carve out an ex-

---

**5.** The Pennsylvania Supreme Court was equally divided in *Midboe,* and thus affirmed the Superior Court's decision. The plurality wrote in support of affirmance. 433 A.2d at 1344.

**6.** The statute at issue in *Midboe,* 40 P.S. § 1009.103 (Supp.1980–81), provided:

"Survivor" means:

(A) spouse; or

(B) child, parent, brother, sister or relative dependent upon the deceased for support.

433 A.2d at 1344.

The court had to determine whether the phrase "dependent upon the deceased for support" applied only to "relative" or to the other relations enumerated in subsection (B) as well. We think that the punctuation makes clear that the latter reading is correct; however, more in line with the question in this case is the recognition by the court in *Midboe* that the phrase in question clearly does not modify "spouse."

**7.** A similar limiting clause in the form of a permissive use proviso in an automobile liability policy has been held to modify only the phrase with which it was juxtaposed. *See Har-*

*leysville Mut. Casualty Co. v. Nationwide Mut. Ins. Co.,* 248 S.C. 398, 150 S.E.2d 233 (1966). The clause defined "person insured" with respect to a nonowned automobile as:

(1) the named insured,

(2) any relative ...

provided the actual use thereof is with the permission of the owner.

150 S.E.2d at 234. The court held that the proviso ("provided the actual use ...") did not limit coverage on the named insured.

**8.** We note that this case does not involve a dispute between an insured and his insurance company, but rather the allocation of liability between two insurance companies. Some courts are reluctant to apply the doctrine of liberal construction when the suit is between insurers. *See, e.g., Thomas v. Aetna Casualty & Sur. Co.,* 28 Ill.App.3d 363, 328 N.E.2d 374, 376 (1975). Pennsylvania law, however, does not appear to share this reluctance. *See St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.,* 655 F.2d 521 (3d Cir.1981); *Manufacturers Casualty Ins. Co. v. Goodville Mut. Casualty Co.,* 403 Pa. 603, 170 A.2d 571, 573 (1961).

ception to Old Republic's coverage.[9] But such "exceptions to the general liability of the insurer are to be strictly construed against the insurance company." *Frisch v. State Farm Fire & Casualty Co.*, 218 Pa. Super. 211, 275 A.2d 849, 851 (1971). The question before us is the extent of the limitation, i.e., whether all coverage or only the coverage on the trailer ceases to be available when there is other insurance applicable to the trailer. The well-established principle of construing the policy in favor of the insured supports the latter interpretation.

#### D.

A third principle of construction instructs that a contract should be read so as to give meaning to all of its terms when read as an entirety. *Monti v. Rockwood Ins. Co.*, 303 Pa.Super. 473, 450 A.2d 24, 26 (1982). Accordingly, "a construction which neutralizes any provision of a contract should never be adopted if the contract can be so construed as to give effect to all the provisions." 13 Appleman, *Insurance Law and Practice*, § 7383 at 34–37 (1976). The meaning of a particular phrase is not properly determined by considering the phrase in isolation but by reading it in harmony with the rest of the contract. Thus, in construing Endorsement # 19, we must be careful not to render superfluous another part of the policy.

St. Paul urges us to read the limiting clause as modifying all of Endorsement # 19. However, when read that way, the

Old Republic policy covers the insured wholly on a contingent basis, that is, only if there is no other insurance on the trailer. Such a reading is impossible to reconcile with the "other insurance" clause in the body of the Old Republic policy that describes the insurance provided therein as primary,

> *except* when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance (emphasis added).

This provision does not make sense if the entire policy exists on a contingent basis, as St. Paul would have us conclude. In order for all of the policy to have meaning, "shall not apply" must modify only the coverage extended to the trailer.

#### E.

St. Paul argues that we cannot construe Endorsement # 19 without referring back to an earlier provision in the policy that Endorsement # 19 modifies, and that we must examine the changes in wording rendered by the modification. We recognize, of course, that comparisons between original and revised versions of contract language can, at times, be a useful tool of construction.[10] However, in this case we

---

9. We note for emphasis that, since an insurance policy is nothing more than a contract, parties to a policy are free to agree to any reasonable conditions that do not contravene public policy. *See Compagnie des Bauxites v. Insurance Co. of N. Am.*, 551 F.Supp. 1239 (W.D.Pa.1982). In Pennsylvania, an insurer is free to place limitations, exclusions or conditions in a policy as long as the insurer does not seek to escape from all obligation to the insured. *See Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563 (1983) (clearly worded exclusion in liability insurance policy upheld).

10. Such analysis is a common tool of statutory construction. For example, in *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983), the Court refused to ascribe a difference in statutory language to "a simple

mistake in draftsmanship." Instead it found that, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.* (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972)). However, the Supreme Court has made clear that, even with respect to Congressional draftsmanship,

> [a]lthough a "change of [statutory] language is some evidence of a change of purpose," *Johnson v. United States*, 225 U.S. 405, 415 [32 S.Ct. 748, 751, 56 L.Ed. 1142] (1912), the inference of a change of intent is only "a workable rule of construction, not an infallible guide to legislative intent, and cannot overcome more persuasive evidence." *United States v. Dicker-*

do not find such an analysis persuasive, in light of the plain language of Endorsement # 19 itself and the ambiguous nature of the amendment.

Endorsement # 19 is an amendment of Endorsement # 7, which reads, in pertinent part:

The insurance afforded to such lessee/renter applies only to the maintenance or use of (1) the automobile so leased/rented and (2) trailers owned by the lessee/renter or for which he is legally liable, but only while such trailer is attached to the leased/rented automobile referred to in part (1) of this paragraph. The insurance under part (2) of this paragraph is excess over any other valid and collectible insurance the lessee/renter may have whether such coverage is on a primary, excess, or contingent basis.

Plainly, the primary purpose of the amendment was to reduce Old Republic's exposure even further in the event it was faced with a competing insurance policy. Formerly, under Endorsement # 7, Old Republic's coverage, in the face of other insurance, was merely "excess." However, under the amended provision, the Old Republic policy "shall not apply" at all, at least in certain instances. St. Paul, however, would have us read much more into the amendment.

St. Paul notes that the original endorsement clearly spelled out that it was only the insurance under part (2), with respect to the trailer, that would become excess. The amended provision, on the other hand, refers generally to "such insurance." St. Paul argues that this evinces an intent to expand the limitation on coverage to the automobile as well as to the trailer, thus making the provision a true escape clause, as it attempts to deny coverage entirely. We decline to read so much into this revi-

sion, as we find other explanations for the change in language at least as plausible.

Foremost, the amendment obviously had a much more basic purpose, which was expressed quite clearly, *viz.*, to reduce coverage from "excess" to nonexistent, in certain instances. We see no reason to strain to find other purposes for the amendment.

In the absence of affirmative evidence that the amendment was designed to expand the exclusion from the trailer to the tractor as well, we find that the old endorsement, if it is probative of anything at all, could just as easily be regarded as evidence of the drafters' desire to limit the exclusion to the trailer only. We see no reason to believe that this intent did not continue through to the new endorsement.

Moreover, it bears emphasis that we are wary of inferring anything at all from such an exegesis of the history of the endorsement.[11] We see no reason to believe that the change in language reflects anything more than a change in style, with no intent to change the substantive meaning. We must be careful not to apply overly lawyer-like precision or to read terribly fine distinctions into a document that is hardly a model of clear and careful draftsmanship.

### F.

For all the foregoing reasons, we conclude that the limiting clause of Endorsement # 19 of the Old Republic policy is not an escape clause, since it does not evince an intent to escape coverage entirely in the face of other insurance, but rather merely avoids coverage on the trailer. Therefore, since the St. Paul policy provides "other coverage applicable to the trailer and available to the lessee," the Old Republic policy provides primary coverage on the tractor only and no coverage on the trailer. We turn now to an analysis of the St. Paul policy.

---

· *son,* 310 U.S. 554, 561 [60 S.Ct. 1034, 1038, 84 L.Ed. 1356] (1940).

*McElroy v. United States,* 455 U.S. 642, 651 n. 14, 102 S.Ct. 1332, 1337 n. 14, 71 L.Ed.2d 522 (1982). *See also Martin v. Luther,* 689 F.2d 109, 117 n. 8 (7th Cir.1982) ("stylistic" changes resulting from statutory revisions "may restate the

prior law through a different form of expression, but no substantive change is intended").

**11.** Given the wariness with which we would adopt this approach for statutory construction, *see supra* note 10, we are certainly reluctant to rely upon it in construing an inelegantly drafted insurance contract.

## IV.

The St. Paul policy states, in relevant part:

1. For any covered auto you own this policy provides primary insurance. For any covered auto you don't own, the insurance provided by this policy is excess over any other collectible insurance. However, while a covered auto which is a trailer is connected to another vehicle, the liability coverage this policy provides for the trailer:

    (a) is excess while it is connected to a motor vehicle you don't own.

    (b) is primary while it is connected to a covered auto you own.

Both parties agree that subparagraph 1(a) applies to this accident, making St. Paul's coverage on the trailer "excess." However the parties do not agree on the meaning or scope of this excess insurance provision.

It is undisputed that when there is no other applicable insurance to which the excess clause can apply, an excess clause becomes, in effect, primary. *United National Insurance Co. v. Philadelphia Gas Works*, 221 Pa.Super. 161, 289 A.2d 179, 182 (1972). The question before us, however, is whether there is any other applicable insurance in this case.

We have already explained that Old Republic's policy does not provide any coverage on the trailer. *See supra* Part III. This leaves St. Paul as the only carrier to provide any insurance directly on the trailer itself. Therefore, Old Republic argues, since there is no coverage on the trailer over which St. Paul's coverage can be excess, the St. Paul policy must be treated as primary.[12]

██ Although this argument has facial appeal, we find it ultimately unpersuasive, as it is contrary to the intent of the policy as we understand it. We hold instead that, since there is "other collectible insurance"

available to cover this accident, the St. Paul policy provides only excess coverage, and that St. Paul need not provide any insurance until the Old Republic policy is exhausted.

### A.

At the outset, we note that the St. Paul policy, in spite of an obvious effort to speak in "plain English," fails to specify clearly what the word "excess," in subparagraph 1(a), refers to. Thus we are forced to construe, once again, the meaning of a phrase in an insurance policy. However, we see no reason to believe that the word "excess" here means anything other than what it meant earlier in the same paragraph; "excess" is simply being used here as a shorthand phrase to mean "excess over any other collectible insurance." We must therefore decide what constitutes "other collectible insurance."

### B.

Old Republic argues that since it has not provided any coverage *on the trailer* there is no "other collectible insurance" over which St. Paul's coverage can be excess. This argument assumes, however, that the other insurance must be on the underlying vehicle itself, rather than simply available to the insured generally from the accident. We refuse to read the clause so narrowly.

The purpose of excess insurance is to provide a fallback for the insured. In the event no other insurance is available, or other insurance is insufficient, the excess insurer stands ready to fill in the gap. The excess insurer, in effect, provides insurance against the risk of insufficient insurance. *See generally* 16 Couch, *Cyclopedia of Insurance Law* § 62:48–49.

Excess insurance coverage typically arises when the policyholder is driving a non-owned vehicle,[13] or in the case of trail-

---

12. Old Republic, of course, does not seek to avoid liability, entirely, for insuring this accident. It concedes primary coverage on the tractor. Thus, by asking the court to find that St. Paul has provided coverage for the trailer in this accident, Old Republic is simply asking that St.

Paul be made to share concurrent liability with Old Republic.

13. Examples of typical policies providing excess coverage when the insured is driving a vehicle belonging to another are numerous. *See, e.g., Occidental Fire & Casualty Co. v. International*

ers, when the trailer is attached to a non-owned vehicle.[14] The evident intent of such a provision is to have the owner's insurance cover any losses in the first instance, with the excess policy simply remaining available in the event of a shortfall. In the case of typical automobile insurance, the assumption is that when the insured is driving somebody else's car, the owner's insurance company is the primary carrier; the driver's policy provides excess coverage.[15] Likewise, when the insured has attached its trailer to somebody else's vehicle, the insurance procured by the owner of that vehicle is the primary source of coverage. Only if the owner's insurance is insufficient does the trailer coverage become operative. Thus the obvious assumption underlying the St. Paul policy, in providing only excess coverage on the trailer when it is attached to a non-owned vehicle, is that the owner of the tractor will supply the primary coverage. This analysis is perfectly consistent with the general rule that, for insurance coverage purposes, the tractor and trailer are treated as one operating unit; coverage on the one effectively serves as coverage on the whole. *See supra* Part II. It is thus quite reasonable, and consistent with the general understanding of the parties, to treat Old Republic's insurance on the tractor as "other collectible insurance" for purposes of St. Paul's excess coverage on the trailer.

In fact, from the perspective of the excess insurer, it should make no difference where the "other collectible insurance" arises from. St. Paul has simply insured Contrans against the possibility of a shortfall in coverage. Since other insurance, specifically intended to cover liabilities arising from this accident, is available, *viz.,* Old Republic's coverage on the tractor, St. Paul's obligations do not ripen until such other insurance is exhausted.

We recognize, of course, that St. Paul's "other insurance" clause is susceptible to a contrary interpretation. However, in the absence of convincing arguments to the contrary, we feel constrained by the plain meaning of the policy terms. The St. Paul policy could easily have stated that its coverage is "excess over any other insurance *on the trailer*," had that been the intent of the parties. The language of the policy, however, is not so limited. Coverage is "excess over *any other* collectible insurance." We read this to mean what it says.

Therefore, we conclude that St. Paul's coverage provides only excess insurance for this accident. The Old Republic policy —the "other collectible insurance"—is primary.

## V.

St. Paul moved for a declaration in the district court that Old Republic has primary responsibility for providing a defense of the pending civil suit. It is not clear whether the district court addressed this question. However, because the result is

Ins. Co., 804 F.2d 983, 987 (7th Cir.1986) (Occidental policy: "With respect to ... any non-owned automobile, the insurance under this endorsement shall be excess insurance over any other valid and collectible insurance ... available to the insured"); *Carter v. Vangilder*, 803 F.2d 189, 190–91 (5th Cir.1986) (Louisiana Farm policy: "insurance with respect to ... 'non-owned automobiles' ... shall be excess insurance over any other valid and collectible insurance"); *Farrell Lines v. Insurance Co. of N. Am.*, 789 F.2d 300, 303 n. 5 (5th Cir.1986) (INA policy); *see also* cases cited in Couch, *supra*, § 62:49 at 489–95 n. 10.

14. *See, e.g., Carter*, 803 F.2d at 191 (Chicago Insurance Co. policy: "when the covered auto is a trailer which is connected to a power unit, this policy's liability coverage is ... excess if the power unit is not a covered auto"; *Chicago Ins.*

Co. v. *National Union Fire Ins. Co.*, No. 84–5485, slip op. (E.D.Pa. Dec. 5, 1985) [Available on WESTLAW, 1985 WL 4296] (National Union policy: same).

15. Some courts have gone so far as to turn this standard practice of the insurance industry into a rule of law, overriding any possibly conflicting language in the policies. *See Aetna Casualty & Surety Co. v. Home Indem. Co.*, 330 F.Supp. 735, 736–37 (N.D.Ind.1971) (when court is faced with two competing "other insurance" clauses, public policy demands that owner's insurance company furnish primary coverage); *cf. Indiana Ins. Co. v. American Underwriters, Inc.*, 261 Ind. 401, 304 N.E.2d 783, 785, 787 (1973) (citing, but ultimately rejecting, the "majority rule," *viz.*, "all else being equal, primary liability falls on the owner's insurer rather than the operator's insurer").

foreordained by our previous discussion, we will address it and grant this motion now. Old Republic, as the primary insurer, has the primary responsibility, in accordance with its contractual obligation, to defend Contrans and Ryder in the pending Toney suit, and Old Republic must reimburse St. Paul for any costs already incurred in this defense.

Finally, St. Paul has requested reimbursement of its costs and expenses in prosecuting this declaratory judgment action. Because we agree with the district court that Old Republic's refusal to provide coverage was neither totally unreasonable nor in bad faith, St. Paul's request for reimbursement of its expenses was properly denied.

## VI.

In sum, we hold that Old Republic has primary responsibility for coverage and for the defense of the underlying action, and that St. Paul, as excess insurer, need not contribute coverage until Old Republic's policy limits are exhausted. The district court's grant of summary judgment for St. Paul will therefore be affirmed.