**LEXINGTON INSURANCE COMPANY, Plaintiff,**

v.

**WESTERN PENNSYLVANIA HOSPITAL, et al., Defendants.**

**Civil Action No. 03–1675.**

United States District Court, W.D. Pennsylvania.

Feb. 6, 2004.

Jay M. Levin, Richard C. Mason, June E. Gilson, Deborah M. Minkoff, Cozen & O'Connor, Philadelphia, PA, for Plaintiff.

Edward B. Wood, Douglas L. Price, Harry S. Cohen & Associates, Pittsburgh, PA, for Defendants.

## OPINION

HARDIMAN, District Judge.

### I. Introduction

This declaratory judgment action was brought by Lexington Insurance Company ("Lexington") against its insured, Western Pennsylvania Hospital ("West Penn"), as well as Elizabeth and Harry Lieb (the "Liebs"), who filed a medical malpractice action in state court against West Penn (the "Lieb Claim"). Although there is no dispute that West Penn has primary insurance coverage for the Lieb Claim, Lexington claims that it has no obligation to provide coverage under its umbrella policy because West Penn failed to report the Lieb Claim during the effective policy period.

The Court agreed to hear this case on an expedited basis because the Lieb Claim is listed on the March 2004 trial list of the Court of Common Pleas of Allegheny County. The parties have filed cross motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure and the case is ripe for adjudication. For the reasons that follow, the Court will grant Lexington's Motion for Summary Judgment.

### II. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Saldana v. Kmart Corp.*, 260 F.3d 228, 231–32 (3d Cir.2001). "Summary judgment procedure is properly regarded not as a disfavorable procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted).

In resolving a motion for summary judgment, courts must "consider all evidence in the light most favorable to the non-moving party" to determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Schnall v. Amboy Nat'l Bank*, 279 F.3d 205, 209 (3d Cir.2002). Summary judgment is appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

## III. Statement of Undisputed Facts

On May 24, 1990, Elizabeth Lieb gave birth to a daughter, Kathryn, at West Penn Hospital. Eleven years later, on May 25, 2001, the Liebs filed a state court medical malpractice action against West Penn for negligence related to the birth of Kathryn Lieb. Three weeks before the Liebs filed suit, West Penn submitted a "Notice of Claim" to its primary professional liability carrier, PHICO Insurance Company ("PHICO"), which provided claims-made professional liability coverage during 2001. Because the Lieb Claim was first asserted more than four years after the occurrence giving rise to it, however, PHICO referred the case to the Medical Professional Liability Catastrophe Fund (the "Fund") pursuant to 40 P.S. § 1301.605.[1] The Fund assumed West Penn's defense of the Lieb Claim, and is responsible for the first million dollars of any indemnity payments. *Id.*

During the same period that PHICO provided primary coverage to West Penn, Plaintiff Lexington provided umbrella liability coverage (the "Lexington Policy").[2] The Lexington Policy is comprised of a declarations page, a forms schedule, a schedule of underlying insurance, a pre-printed commercial umbrella policy form,

and twelve endorsements. Lex. Pol. at 000001–000035. Although the Lexington Policy provides *general* liability coverage on an "occurrence" basis (*id.* at 000005), it provides "follow form" claims-made coverage for *medical professional* liability. *Id.* at 000025 (Endorsement # 007).

On December 31, 2001, the last day of the PHICO and Lexington policy periods, West Penn advised Lexington's agent of 23 claims under the Lexington Policy, but the Lieb Claim was not among them. West Penn concedes that it did not report the Lieb Claim to Lexington until February 12, 2003, over a year after the Lexington Policy expired with respect to claims for medical professional liability. By letter dated August 13, 2003, Lexington's agent reserved its rights to deny coverage of the Lieb Claim.

## IV. Legal Analysis

### A. *Insurance Contract Interpretation*

A federal court sitting in diversity must apply state substantive law. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Under Pennsylvania law, insurance coverage "is a question of law for the Court." *Snyder Heating Co., Inc. v. Pennsylvania Mfr. Ass'n Ins. Co.*, 715 A.2d 483, 485 (Pa.Super.1998). The insured has the burden to prove that a particular claim falls within the coverage of an insurance policy. *Jacobs Constructors, Inc. v. NPS Energy Services, Inc.*, 264 F.3d 365, 376 (3d Cir.2001) (citing *Erie*

---

**1.** The Medical Professional Liability Catastrophe Fund, known colloquially as the "CAT Fund," was created by the Pennsylvania General Assembly in 1975. In 2002, the General Assembly reconstituted the CAT Fund as the Medical Care Availability and Reduction of Error Fund (the "M–Care Fund"). Claims

subject to section 605 of the Health Care Act are commonly referred to as "605 Claims."

**2.** In 2000, Lexington issued an umbrella policy to West Penn Allegheny Health System, a network of health care providers of which West Penn is a part. The umbrella policy was renewed in 2001 by Lexington.

*Ins. Exch. v. Transamerica Ins. Co.*, 516 Pa. 574, 583, 533 A.2d 1363, 1368 (Pa. 1987)). Contract terms that are clear and unambiguous are to be given their "plain and ordinary meaning." *St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 (3d Cir.1991). Whether a contract term is ambiguous is a question of law for the court. *Id. See also Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 232 (3d Cir.2001).

"A contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction." *Bohler–Uddeholm America Inc. v. Ellwood Group Inc.*, 247 F.3d 79, 93 (3d Cir.2001). A contract term is ambiguous "if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has double meaning." *Pizzini v. American Int'l Specialty Lines Ins. Co.*, 210 F.Supp.2d 658 (E.D.Pa. 2002). In order to be ambiguous, each of the proffered interpretations must be reasonable; an unreasonable interpretation does not create ambiguity. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir.1997). In interpreting a policy, the document must be read as a whole. *Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 169 (3d Cir.1987). Accordingly, a proffered interpretation cannot create ambiguity if it renders another provision meaningless. *Id.* Finally, in ascertaining the intent of the parties, the Court is to interpret the policy with an eye toward avoiding ambiguity. *USX Corp. v. Adriatic Ins. Co.*, 99 F.Supp.2d 593, 609 (W.D.Pa.2000). Mindful of these principles of insurance contract interpretation, the Court turns to the contracts at issue.

### B. *The Lexington Policy*

In respect to medical professional liability, the Lexington Policy is a follow form, claims-made policy. *See* Lex. Pol. at Endorsement # 007. As such, for coverage to exist any and all claims must be reported during the policy period. *See St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 535 n. 3, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978). The distinction between a claims-made and an occurrence policy is critical. As Judge Caldwell of our sister court noted:

> With claims-made policies, the very act of giving an extension of reporting time after the expiration of the policy period, as the district court proposes, negates the inherent difference between the two contract types.... Claims-made or discovery policies are essentially reporting policies. If the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay; if the claim is not reported during the policy period, no liability attaches. If a court were to allow an extension of reporting time after the end of the policy period, such is tantamount to an extension of coverage to the insured gratis, something for which the insurer has not bargained. This extension of coverage, by the court, so very different from a mere condition of the policy, in effect rewrites the contract between the two parties.

*City of Harrisburg v. International Surplus Lines Ins. Co.*, 596 F.Supp. 954, 961 (M.D.Pa.1984) *aff'd without opinion*, 770 F.2d 1067 (3d Cir.1985) (quoting *Gulf Insurance Co. v. Dolan, Fertig and Curtis*, 433 So.2d 512, 515–16 (Fla.1983)). *See also Clemente v. Home Insurance Co.*, 791 F.Supp. 118, 121–22 (E.D.Pa.1992), *aff'd without opinion*, 981 F.2d 1246 (3d Cir. 1992).

Endorsement # 007 explicitly states: *"PROVIDES CLAIMS–MADE COVERAGE—PLEASE READ CAREFULLY* .... All of the terms and conditions of said underlying insurance shall apply to

this insuring agreement except as otherwise expressly stated herein." *See* Lex. Pol. at 000025 (emphasis in original). According to the Lexington Policy's schedule of underlying insurance, the primary professional liability carrier is PHICO. *Id.* at 000004. Consistent with the language of Endorsement # 007, the PHICO Policy is a claims-made policy, requiring that claims be reported to the insurer during the policy period for coverage to exist. *See* PHICO Pol. at PHI 0076. The fact that the schedule of underlying insurance lists the PHICO Policy by reference rather than specific policy number is immaterial.[3]

In addition, Endorsement # 007 provides an automatic extension of the reporting period for sixty days as well as an optional extended reporting period which West Penn could purchase prior to the expiration of the automatic extension. *See* Lex. Pol. at 000027–28. The automatic and optional extension provisions of Endorsement # 007 are consistent with the reporting requirement that followed form with the PHICO Policy, *viz.*, that all claims for which coverage is sought must be reported during the policy period. To hold otherwise would render the automatic and optional extension provisions meaningless in violation of Pennsylvania law. *See Contrans*, 836 F.2d at 169; *Girard Trust Bank v. Life Ins. Co. of No. Amer.*, 243 Pa.Super. 152, 364 A.2d 495, 498 (1976).

### C. *West Penn's Arguments*

West Penn makes several arguments in support of its claim that the language of the Lexington Policy requires coverage. The crux of West Penn's position is that Endorsement # 007 does not apply to the Lieb Claim because it is a 605 Claim. West Penn relies upon Endorsement # 001 of the Lexington Policy—which is entitled "Coverage Amendment—Section 605 Claims"—and provides that if the CAT Fund assumes responsibility, Lexington's umbrella coverage will apply to 605 Claims immediately over the CAT Fund's limit of liability. *See* Lex. Pol. at 000019. Although the Court agrees that Endorsement # 001 requires Lexington to provide umbrella coverage to West Penn for liability over the CAT Fund's limit, nothing in Endorsement # 001 suggests that Endorsement # 007 is ineffective when Endorsement # 001 is implicated. Contrary to West Penn's claim, the Court finds that these two endorsements are complementary. Endorsement # 007 requires Lexington to provide excess claims-made professional liability coverage while Endorsement # 001 makes explicit that Lexington remains liable for coverage even if the CAT Fund supplants PHICO as underlying insurer. As the Court of Appeals for the Third Circuit directed in *Contrans*, the Lexington Policy must be read as a whole and a proffered interpretation cannot create ambiguity if it renders

---

3. The omission of a specific policy reference is common in respect to contracts for excess or umbrella insurance:

> Excess insurers frequently agree to provide coverage to an insured in excess of agreed types and amounts of underlying insurance, without having seen copies of the underlying policies or, in many cases, without even knowing the name of the company that is to provide the underlying insurance, leaving such matters 'to be advised.' ... [A] following form excess policy often incorporates by reference the terms and conditions of the underlying policy. It is well settled that the obligations of following form excess insurers are defined by the language of the underlying policies, except to the extent that there is a conflict between the two policies, in which case the wording of the excess policy will control.

Barry R. Ostrager, *et al.*, *Handbook on Insurance Coverage Disputes*, 817–18 (11th ed., Aspen L. & Bus.2002) (citations omitted).

another provision meaningless. *Contrans,* 836 F.2d at 169.

■ In addition to its argument that Endorsement # 001 vitiates Endorsement # 007, West Penn claims that Condition F of the Lexington Policy mandates coverage of the Lieb Claim. Condition F requires West Penn to give notice to Lexington "as soon as practicable of an Occurrence which may result in the claim under this policy." *See* Lex. Pol. at 16. Significantly, the word "Occurrence" is capitalized, relating to a specific occurrence that would trigger coverage under an occurrence-based policy. The "occurrence" language in Condition F is inconsistent with the follow form, claims-made language in Endorsement # 007 and the PHICO Policy. According to the Court of Appeals, whenever a conflict exists between the body of the policy and an endorsement thereto, the endorsement controls. *St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.,* 655 F.2d 521, 524 (3d Cir.1981). Therefore, West Penn's argument that Condition F requires coverage is erroneous.[4]

In the alternative, West Penn argues that even if the Court found Endorsement # 007 effective, the notice-prejudice rule established by the Pennsylvania Supreme Court in *Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193, 198 (1977) applies in this case. Consistent with this position, the Liebs urge the Court to apply *Brakeman* based on the decision of the Court of Appeals for the Third Circuit in *Trustees of Univ. of Penn. v. Lexington Ins. Co.,* 815 F.2d 890 (3d Cir.1987). The Court finds both *Brakeman* and *Trustees* to be factually inapposite to this case.

■ In *Brakeman,* the Pennsylvania Supreme Court held that the insurer was required to show prejudice before it could deny coverage based on late notice. *Brakeman,* 371 A.2d at 197–98. However, the policy at issue in *Brakeman* was an occurrence policy. *Id.* at 194. West Penn has cited no case in which a court has applied a notice-prejudice rule to a claims-made policy. In fact, there is overwhelming authority to the contrary. *See, e.g., Pizzini,* 210 F.Supp.2d at 669–670 ("under Pennsylvania law the *Brakeman* notice-prejudice rule does not apply to claims made policies"); *Pension Trust Fund v. Fed. Ins. Co.,* 307 F.3d 944, 956 (9th Cir. 2002) (California notice-prejudice rule governs occurrence policies not claims-made policies); *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.,* 174 F.3d 653, 659 (5th Cir.1999) (applying notice-prejudice to claims-made policies would interfere with public's right to contract); *Di-Luglio v. New England Ins. Co.,* 959 F.2d 355, 359 (1st Cir.1992); *City of Harrisburg,* 596 F.Supp. at 961. The decision of the Court of Appeals for the Third Circuit in *Trustees* is consistent with the foregoing authorities because an occurrence policy, rather than a claims-made policy, was at issue in that case. *Trustees,* 815 F.2d at 893. Therefore, *Trustees* is inapposite and the Court declines to apply the *Brakeman* rule to the Lexington Policy.

Simply put, West Penn's arguments fail because they ignore the essential fact that the Lexington Policy is a claims-made policy rather than an occurrence policy. In a claims-made policy, notice is a condition precedent to coverage. *Andy Warhol*

---

4. West Penn also argues that because the PHICO Policy requires West Penn to report claims to the "Company" and defines "Company" as PHICO, West Penn became entitled to umbrella coverage when it notified PHICO of the Lieb Claim. If the Court were to accept this argument, however, Lexington would be obliged to cover any claim in excess of the underlying insurance without ever having received any notice from West Penn. This result is plainly contradictory to Endorsement # 007 and the Court rejects it for the same reason it rejects West Penn's argument regarding Endorsement # 001.

*Found. for the Visual Arts, Inc. v. Federal Ins. Co.,* 189 F.3d 208, 214 (2d Cir.1999) (applying New York law); *Cohen & Co. v. North River Ins. Co.,* No. 93–1860, 1994 WL 105561, \*2, 1994 U.S. Dist. LEXIS 3646, at \*7 (E.D.Pa. March 29, 1994) (applying Pennsylvania law). Because West Penn admittedly failed to make a claim under the Lexington Policy until well after that policy expired, the Court holds that no coverage exists under Lexington policy number 6332691.

### V. Conclusion

For all the foregoing reasons, the Court will grant Lexington's Motion for Summary Judgment, deny West Penn's Motion for Summary Judgment, and dismiss West Penn's Counterclaim.

An appropriate order follows.

### *ORDER OF COURT*

Based on the accompanying opinion, it is HEREBY ORDERED as follows:

1. Plaintiff's Motion for Summary Judgment (Document No. 26) is GRANTED.

2. Defendant's Motion for Summary Judgment (Document No. 27) is DENIED.

3. Defendant's Counterclaim is DISMISSED with prejudice.

4. The clerk is directed to mark this case CLOSED.