VIACOM, INC., as Successor in Interest to Westinghouse Electric Corporation, Appellant,

v.

TRANSIT CASUALTY COMPANY in Receivership, Respondent.

No. SC 85986.

Supreme Court of Missouri, En Banc.

July 1, 2004.

As Modified on Denial of Rehearing Aug. 3, 2004.

Daniel G. Donahue, St. Louis, for appellant.

Katherine S. Walsh, James C. Owen, Chesterfield, for respondent.

Joe B. Whisler, Kansas City, for amicus curiae.

PER CURIAM.[1]

Westinghouse Electric Corporation[2] purchased excess-insurance policies from Transit Casualty Company. Transit is in receivership, and Westinghouse's claims under two of the policies were denied. Westinghouse appealed. The Circuit Court of Cole County (the receivership court) determined that Missouri law, not Pennsylvania law, applied to this case and that Transit could allocate the claims based on a pro rata, time-on-the-risk method. As a result, Westinghouse would collect nothing on its policies. Because Pennsylvania law applies, the judgment is reversed, and the case is remanded.

## FACTS

The underlying allegations involve Westinghouse products that resulted in toxic tort bodily injury, arising predominantly from asbestos exposure, and steam generator claims. Plaintiffs in those suits contend that their injuries occurred because of exposure to asbestos in various products manufactured by Westinghouse.

The Transit policy contains a service-of-suit clause that states:

It is agreed that in the event of the failure of this COMPANY to pay any amount claimed to be due hereunder, this COMPANY, at the request of the INSURED, will submit to the jurisdiction of any Court of Competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be de-

termined in accordance with the law and practice of such Court.

The policy also provides, "Terms of this policy which are in conflict with any applicable statutes of the State wherein this Policy is issued are hereby amended to conform to such statutes." The policy has no choice-of-law provision.

Transit issued three excess-liability policies to Westinghouse for 1980, 1981, and 1982, which pay $15 million per occurrence after payment of $100 million by the underlying or primary policy. Westinghouse claimed indemnity, defense, and settlement agreement costs exceeding $528 million for all claims against it, noting other settlement agreements of hundreds of millions of dollars. Westinghouse claims the full amount of the 1980 and 1981 policies-$30 million. Transit denied, asserting that none of its policies were impaired "applying a continuous trigger pro rata allocation methodology."

## STANDARD OF REVIEW

In reviewing a receivership court, *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), is the appropriate standard. This Court will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Since only a legal issue is at stake, this Court reviews the trial court's judgment de novo. *Baldwin v. Director of Revenue*, 38 S.W.3d 401, 405 (Mo. banc 2001).

## DISCUSSION

### Conflict of Laws

Missouri adopted sections 188 and 193 of the *Restatement (Second) of Conflict of*

---

1. This Court transferred this case after opinion by the Court of Appeals, Western District, authored by the Honorable Thomas H. Newton. *Mo. Const. article V, section 10.* Parts of

that opinion are incorporated without further attribution.

2. Viacom, Inc., is the successor-in-interest to Westinghouse Electric Corporation.

*Laws* (1971) for choice-of-law issues in casualty insurance contracts. *Crown Center Redevelopment Corp. v. Occidental Fire & Cas. Co. of North Carolina,* 716 S.W.2d 348, 358 (Mo.App.1986). Section 188 applies to policies with no choice-of-law provision-as here. It provides that the law of the state with the most significant relationship to the transaction and parties governs. *Restatement (Second) of Conflict of Laws* section 188(1). It also provides what contacts are considered: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Restatement (Second) of Conflict of Laws* section 188(2).

Section 193 states that the "validity of ... [the] insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy...." By that section's comment b, the location of the insured risk is given greater weight than any other single contact in determining which state's law controls, although less weight when the policy covers a group of risks scattered throughout two or more states.

■ Under the Restatement, Pennsylvania law controls this case. Westinghouse was incorporated in Pennsylvania, where its insurance department was based. Many policies were contracted for and negotiated in Pennsylvania and issued through Pennsylvania brokers. The policies were delivered to Westinghouse in Pennsylvania and paid for there. Although the risk is spread over multiple states, as is common in asbestos litigation, the parties could expect that the insured risk was predominantly located in Pennsyl-

vania. The only connection with Missouri was Transit's location.

## Receivership Statutes

Having resolved the Restatement issue, it is still necessary to determine if Transit's receivership status changes the result.

■ The statutory scheme for a receivership of an insolvent insurance company is self-contained and exclusive. *State ex rel. Missouri State Life Ins. Co. v. Hall,* 330 Mo. 1107, 52 S.W.2d 174, 178 (1932). "The provisions of the insolvency statutes prevail over any general statutes or common law because the legislature has set forth the substantive law and the procedures to be followed." *In re Transit Cas. Co.,* 900 S.W.2d 671, 676 (Mo.App.1995). Transit argues, and the receivership court found, that Missouri law applies to the claims in its receivership. Because conflict-of-laws analysis is common law-over which the insolvency statute prevails-Transit asserts that it has no place in deciding Westinghouse's claims.

Transit invokes *McDonald v. Pacific States Life Insurance Co.,* 344 Mo. 1, 124 S.W.2d 1157 (1939), to argue that the law of the state where the receivership is located should control all claims. McDonald, however, was trying to circumvent the Colorado insolvency proceeding by using other law to reach property located in Missouri, where he lived, before completion of the insolvency proceedings. He also was attempting to get a preference over other creditors so that he received payment from property in Missouri, while other creditors with the same priority would not have been paid through the insolvency proceeding. This Court's concerns about treating the assets as a unit and making certain all creditors were treated equitably prevented McDonald from using Missouri law to reach property outside the insolvency proceeding.

In this case, Westinghouse is not attempting to seize Transit's property through non-insolvency law and gain preference. Westinghouse is working within the insolvency proceedings to have the appropriate law applied to its claim. This does not harm the "unit" of Transit's assets, so *McDonald* does not apply.

■ Transit also relies on *In re Transit Casualty Co.*, but that case merely holds that when the insolvency code addresses a particular issue, the insolvency code controls. In this case, the choice-of-law question is not addressed by the insolvency code. Where the insolvency code is silent, courts apply the common law and general statutes. *Pulitzer Pub. v. Transit Cas. Co.*, 43 S.W.3d 293, 303 (Mo. banc 2001).

Finally, Transit cites to section 398 of the *Restatement (Second) of Conflict of Laws*, which states that "[t]he manner in which a claim may be proved in a state is determined by the local law of that state." The receivership court has a local Rule 75 governing claims in this receivership, including proving a claim, in order to achieve uniformity and fairness. Transit believes that applying Missouri law to all claims is the only way to achieve uniformity and fairness. Rule 75, however, nowhere states what law resolves determinations about claims and, in fact, says nothing about choice-of-law questions.

### Issues of Fairness and Equity in the Treatment of All of Transit's Creditors

Transit argues that, as an insolvent company, it must focus on ratably distributing its assets to all its creditors. In order to do this, only one law can be applied to all the claims-Missouri's.

The argument ignores that when parties initially contract for insurance, they know they are subject to the law of the state they choose or the state with the most significant relationship. If a claim is made, that state's law determines coverage.

The most ratable distribution of Transit's assets requires that the receivership only pay claims that would be valid if the company had remained solvent. Engaging in a conflict-of-laws analysis to determine which state's law applies is a reasonable request of the receivership court. If that analysis determines that a law other than Missouri's controls, applying foreign law should not burden the receivership court more than analyzing a claim under Missouri law.

### Allocation of Westinghouse's Claims

■ In Pennsylvania, "all sums" allocation applies in long-term, asbestos-related harm cases. *See J.H. France Refractories Co. v. Allstate Ins. Co.*, 534 Pa. 29, 626 A.2d 502 (1993). In *J.H. France*, the insurance policy at issue had similar language to the policy here: "[The Insurer] will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury ... to which this insurance applies, caused by an occurrence...." *Id.* at 505. "Bodily injury" was defined as "bodily injury, sickness or disease sustained by any person, which occurs during the policy period ....," and "occurrence" was defined as "an accident, including continuous or repeated exposure to conditions, which result in bodily injury." *Id.* Although these definitions vary slightly from the terms in this case, the difference is not sufficient. The policy in this case requires only that the occurrence be during the policy period, not the bodily injury, so that the policy in *J.H. France* was actually narrower.

After considering the policy language, medical evidence, and effect of each type

of allocation, the Pennsylvania Supreme Court adopted an "all sums" allocation. *Id.* at 507–9. Because the policy in this case is similar and Pennsylvania law applies, an "all sums" allocation is proper in this case.[3]

## CONCLUSION

The judgment is reversed, and the case is remanded.

All concur.

---

**3.** Because Pennsylvania law applies, there is no need to consider the other points raised in