# H.K. PORTER COMPANY, INC., Appellant,

### v.

# TRANSIT CASUALTY COMPANY IN RECEIVERSHIP, Respondent.

## No. WD 66076.

Missouri Court of Appeals, Western District.

Oct. 31, 2006.

Application for Transfer to Supreme Court Denied Jan. 30, 2007.

Application for Transfer Denied March 20, 2007.

---

James Kent Lowry, Jefferson City, MO, for appellant.

James Curtis Owen, Chesterfield, MO, for respondent.

Before JAMES M. SMART, JR., P.J., EDWIN H. SMITH, and LISA WHITE HARDWICK, JJ.

PER CURIAM.

H.K. Porter Company, Inc. appeals the judgment of the Circuit Court denying coverage under two insurance policies issued by Transit Casualty Company. We find that at all relevant times, including from May 1, 1982, to May 24, 1982, H.K. Porter Company, Inc. and all its subsidiaries were covered by the policy but subject to the exclusion for asbestos-related bodily injuries. The judgment is affirmed.

### Procedural and Factual Background

In 1958, H.K. Porter Company, Inc. ("Porter"), an asbestos manufacturing company, began acquiring certain other existing asbestos companies (the "Asbestos Companies"), including Thermoid Company, Southern Asbestos Company, and others. Porter's pattern in making the acquisitions was to liquidate or dissolve the company and assume all of the company's liabilities, debts, and other interests.

Subsequently, in the wave of asbestos litigation in the 1970s, Porter was named as a defendant in numerous lawsuits alleging bodily injury resulting from exposure to and inhalation of asbestos-containing products manufactured or sold by Porter or the Asbestos Companies. Though some of these claims arose from asbestos exposure from products distributed solely by Porter, a large number of these claims arose from asbestos exposure from prod-

ucts distributed by the Asbestos Companies prior to Porter's acquisition of these companies.

Transit Casualty Company ("Transit") was incorporated in the State of Missouri in 1945 as an insurance company and conducted the business of insurance until 1985, when it was declared to be insolvent by the Cole County Circuit Court. At pertinent times herein, National Underwriting Agency ("NUA") was managing general agent for Transit.

In April 1982, three years before Transit's insolvency, Porter's agent, Rollins, Burdick, Hunter ("Rollins"), at Porter's direction, contacted Insurance Broker's Services ("IBS") regarding the purchase of excess liability insurance. IBS was an independent wholesale broker dealing in surplus lines. IBS would seek quotes in behalf of a retail broker such as Rollins. If the quotes were favorable, IBS would ask for coverage to be bound. In this instance, Rollins sent a telex to IBS requesting the coverage and also proposing the following specific exclusion in the policy: "It is agreed that this policy does not apply to any liability arising out of asbestosis."[1] IBS sent a note to NUA, Transit's agent, asking for the specific asbestos exclusion in the policy. NUA replied to IBS and confirmed that excess umbrella liability coverage would be provided to Porter from May 1, 1982, through May 1, 1983, in the amount of $10 million excess $15 million ("1982 Policy"). The reply stated that "an exclusion" for "asbestos products/related losses" would be included in the policy, but did not state whether the specific exclusion proposed by Rollins or some other exclusion would be included.

---

**1.** Asbestosis is a respiratory disease caused by inhaling asbestos fibers. Asbestosis is to be distinguished from malignant mesothelioma, a cancerous tumor in the lungs that carries a high risk of death. *http://www. nlm.nih.gov/medlineplus/encyclopedia.html*

On April 28, 1982, Rollins, agent for Porter and not for Transit, sent what purported to be a binder for Transit's coverage to Porter. The binder stated that coverage excluded claims for "asbestosis." The reverse side of the binder stated: "This Binder Memorandum shall be automatically terminated and voided by delivery of the policy(s) to the Insured or as otherwise agreed." That same day, IBS sent a telex to NUA stating,

> Further to our binding memo, we would appreciate the following asbestosis exclusion wording on your policy so as to be consistent throughout the placement: **"It is agreed that this policy does not apply to any liability arising out of asbestosis."** Would appreciate your prompt issuance of your policy. Thanks.

Transit's agent at NUA responded to Terry Winkler, the wholesale agent at IBS, confirming coverage *but* with the following provision in response to the asbestos issue: **"CONDITIONS: EXCLUDE (1) ASBESTOS PRODUCTS/RELATED LOSSES."**

The next day, a Confirmation of Insurance was sent from IBS, the broker, to Rollins. It was a short one-page document that stated that the policy period was from May 1, 1982, to May 1, 1983, that the amount of coverage was $10 million excess $15 million, that the premium charged was $10,000. The Confirmation stated: "This insurance is subject to all of the terms and conditions of the Cover Note, Certificate of Insurance and/or Policy which may be issued."

The following day, April 30, 1982, NUA, the underwriting agent for Transit, sent a telex to IBS, stating that NUA, in behalf of Transit, would not agree to the wording of the asbestosis exclusion proposed by Rollins because "asbestosis" is only one type of disease associated with prolonged exposure to asbestos. NUA stated that a "tighter" exclusion was needed. On May 1, 1982, Rollins sent a telex to IBS asking if Transit would approve the following:

> In consideration of the premium charged, it is understood and agreed that this policy shall not apply to health hazard claims made against the insured arising out of asbestosis resulting from the sale, handling, distribution or manufacturing by the named insured of asbestos or any product containing any asbestos or any products containing any asbestos.

This was sent from IBS to NUA. The letter was stamped received by NUA on May 17, 1982, and the word "NO" is written on it.

On May 18, 1982, NUA sent a telex to IBS reiterating the objections to the wording of the proposed exclusion of May 1. He added that Transit would add the following exclusion to the policy:

> In consideration of the premium charged, it is understood and agreed that this policy shall not apply to *any injury, disease, or illness* arising out of the inhalation, ingestion, and/or exposure to asbestos or products containing asbestos sold, handled, distributed, produced and/or manufactured by the named insured.

(Emphasis added). IBS was instructed to obtain coverage with another carrier if this language was not acceptable. IBS passed the language on to Rollins. On May 21, 1982, IBS directed NUA to issue the policy using the wording in the May 18, 1982, telex.

Transit issued policy SCU956214 on May 24, 1982; relevant portions of the policy are set forth below:

> Item 1. Named Insured: H.K. Porter Company, Inc.
>
> . . . .
>
> 1. Coverage

The Company [Transit] hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the insured for all sums which the insured shall be obligated to pay by reason of the liability imposed upon the Insured by law, or assumed under contract or agreement by the Insured for damages, direct or consequential and expenses on account of:

(a) Personal Injuries, including death at any time resulting therefrom,

(b) Property Damage,

(c) Advertising Liability

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurers".

. . . .

**1. Named Insured:**

The words "Named Insured" includes the Named Insured stated in the Declarations forming a part hereof and as stated in the Underlying Policies.

**2. Insured:**

The word "Insured" includes the Named Insured and/or any Officer, Director, Stockholder, Partner, or Employee of the Named Insured, while acting in his capacity as such if so covered in the Underlying Policy.

. . . .

In consideration of the premium charged, it is understood and agreed that this policy shall not apply to any injury, disease or illness arising out of

the inhalation, ingestion, and/or exposure to asbestos or products containing asbestos sold, handled, distributed, produced and/or manufactured by the Named Insured.

. . . .

It is understood and agreed that:

1. Item 1. "Named Insured" of the Declarations is amended to read as follows:

"H.K. Porter Company, Inc. and subsidiaries of all and any kinds."

Transit also issued Policy No. SCU956505 covering the period of May 1, 1983, through May 1, 1984, ("1983 Policy") under essentially the same terms. The only term in the 1983 Policy that is different from the relevant terms in the 1982 Policy is set forth below:

Item 1. Named Insured: H.K. Porter Company, Inc. "And subsidiaries of all and any kinds"

On December 3, 1985, pursuant to section 375.660 RSMo,[2] the Circuit Court of Cole County, Missouri (the "receivership court") declared Transit to be insolvent.

Porter timely filed proof of claim forms ("POCs") in the Transit estate for policyholder protection on the two insurance policies at issue. All claims for which Porter seeks coverage and is now appealing to this court are associated with the Asbestos Companies as they were prior to 1958 when they became a part of Porter. On August 12, 1999, Transit issued Notices of Determination ("NODs"), as required by section 375.1214, to Porter denying its claims under the POCs filed. On September 28, 1999, Porter filed a Request for Review[3] of the NODs. Transit agreed to

**2.** All statutory references are to the Revised Statutes of Missouri 2000, unless otherwise noted.

**3.** The Request for Review is equivalent to the "objections" required by § 375.1214. The term "Request for Review" is taken from the

Cole County Third Amended Local Rule 75, enacted for the Transit Receivership pursuant to § 375.670.1.

defer Porter's review while Porter provided additional documents to substantiate its claims and show impairment to Transit's policies. On October 31, 2000, the receivership court issued its Administrative Order No. 49 in the Transit estate, which stated, in pertinent part:

> [A]ll claimants, including those that have already filed policyholder protection proof of claim forms, must file the existing evidence of their current, unresolved claims and any actuarial evidence (or another accepted method of valuing claims with reasonable certainty), at their present value, of future claims that may be covered by a Transit policy or other contract by 3/15/2001. After that date, no new claims or evidence of claims shall be accepted or reviewed by the Special Deputy Receiver.

In response to this order, Porter submitted several boxes of materials that it contends support its claims against Transit. Transit was not persuaded by the additional evidence and, in addition, believed there were coverage defenses. Therefore, Transit and Porter were unable to resolve the claims.

On August 28, 2001, a status conference was held before the receivership court. At this conference the parties agreed, pursuant to Mo. Sup.Ct. Rule 68.01, to submit three Certified Questions to a Special Master for determination. The Special Master appointed was James P. Dalton. The three Certified Questions read:

> 1. **Terms of Coverage**—Do (a) the terms of the asbestos-related exclusion (if any) contained in the Confirmation of Insurance issued on April 29, 1982 or (b) the terms of the asbestos-related exclusion (if any) contained in the insurance policy endorsement countersigned on May 24, 1982, control the coverage of asbestos bodily injury claims during that twenty-five day period?

> 2. **Named Insured**—Are the corporations which sold, handled, distributed, produced and/or manufactured the asbestos for which Porter is making claims "Named Insureds" under the policies, which term is defined as "H.K. Porter Company, Inc. and subsidiaries of any and all kinds"?

> 3. **"Predecessor" Liability**—Assuming the claims at issue fall under the Transit policies' coverage for asbestos bodily injury claims which Porter is legally obligated to pay, does the asbestos-related exclusion (or exclusions) apply to products that were not sold, handled, distributed, produced and/or manufactured by Porter?

The Special Master returned his findings of fact, conclusions of law, and recommendations on May 20, 2003, after extensive briefing and oral arguments by the parties. Initially the parties briefed whether Missouri law or Pennsylvania law was applicable. However, at the hearing Porter argued that a choice of law determination was premature.

The Special Master considered Missouri law to be controlling, although he believed his Conclusions of Law would be substantially the same applying either Pennsylvania or Missouri law. He concluded that, despite Porter's arguments to the contrary, there was no meeting of the minds as to the Confirmation sent, and, thus, it could not be deemed binding on Transit for asbestos-related claims. In addition, he noted that both the binder and Confirmation stated that coverage would be subject to the terms of the policy when issued. Thus, he found that the asbestos-related exclusion contained in the policy controlled.

He also found that the policy exclusion included the Asbestos Companies, despite Porter's argument that the asbestos exclusion applied only to claims arising out of

asbestos products distributed by Porter itself, not by the Asbestos Companies before they were incorporated into Porter. He based this conclusion on the language in Endorsement No. 4 stating that the "Named Insured" included "subsidiaries of all and any kind." Thus, the asbestos-related exclusion also applied to products distributed by the Asbestos Companies prior to their incorporation into Porter.

The Special Master found that Porter assumed all liabilities of the Asbestos Companies when it merged them into itself. Therefore, all the claims against the Asbestos Companies for asbestos-related injuries, whether they accrued before or after the companies merged with Porter, fell under the asbestos-related exclusion and were excluded from coverage by the policy.

Porter timely filed objections to the Special Master's report. On November 5, 2004, the parties engaged in oral argument before the Honorable Thomas J. Brown, III, in the Circuit Court of Cole County. Prior to the time that oral argument was scheduled, the case of *Viacom, Inc. v. Transit Casualty Co. in Receivership*, 138 S.W.3d 723 (Mo. banc 2004), was decided.[4] Based on *Viacom*, the court determined that it could not rule upon Porter's objections without first making a choice of law determination. Therefore, the parties further briefed the choice of law issue, and the court made an interlocutory ruling that Pennsylvania law would apply to the interpretation of the contracts at issue.

Despite the fact that the Special Master made his findings based on Missouri law, the court determined that the Special Master had answered the questions properly under Pennsylvania law, stating that Penn-sylvania law is very similar to Missouri law on this issue. The court stated that, looking to Pennsylvania law, the disputed terms of the contract are not ambiguous but are subject to only one interpretation. This interpretation was that of the Special Master. Therefore, the court adopted the findings and conclusions of the Special Master. This appeal followed.

### Standard of Review

The parties are agreed that Pennsylvania law, not Missouri law, applies. We assume the correctness of this assertion in view of the parties' agreement and in view of the decision in *Viacom, supra.* Accordingly, we will decide substantive issues based upon Pennsylvania law.

Although we decide substantive issues based on Pennsylvania law, our standard of review is a procedural matter. *Block Fin. Corp. v. Am. Online, Inc.*, 148 S.W.3d 878, 884 (Mo.App.2004). "Procedural questions are determined by the state law where the action is brought." *Id. (quoting Peoples Bank v. Carter*, 132 S.W.3d 302, 305 (Mo.App.2004)). Thus, standard of review is governed by Missouri law. *Id.*

In reviewing a receivership court, this court will affirm unless there is no substantial evidence to support the judgment, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Viacom*, 138 S.W.3d at 724. Because the parties generally agree on all relevant facts, our analysis is essentially one of interpretation of the insurance contract. The meaning of an insurance contract is a question of law, particularly in reference to the question of

---

4. This case concerned another insured of Transit who filed proofs of claims while Transit was in receivership. The Circuit Court had denied claims based on Missouri law. The Supreme Court of Missouri held that Pennsylvania law actually controlled. *Viacom*, 138 S.W.3d at 725.

coverage. *Liberty Mut. Ins. Co. v. Havner*, 103 S.W.3d 829, 832 (Mo.App.2003). If only a legal issue is at stake, this court reviews the trial court's judgment *de novo*. *Viacom*, 138 S.W.3d at 724.

■ In this particular case, a special master was appointed pursuant to Rule 68.01 to determine the answers to the three certified questions. However, we review the decision of the trial court, not the findings and recommendations of the master. *D'Agostino v. D'Agostino*, 54 S.W.3d 191, 196 (Mo.App.2001).

### Analysis

Porter assigns two points of error in its brief. The first point claims that the trial court erred in finding that the asbestos-related exclusion in the insurance policy controlled during the period of May 1 to May 24, 1982. The second point claims that the trial court erred in its determination that the asbestos-related exclusion applied to the Asbestos Companies by classifying them as part of the "Named Insured" under the terms of the exclusion. We will consider each point in turn.

### Whether the Confirmation or the Policy Controlled

In its first point of error, Porter claims that the asbestos-related exclusion contained in the 1982 Policy does not control from the period of May 1 to May 24, 1982. Porter notes that it received the Confirmation of Insurance on May 1, 1982, and did not receive the actual policy until May 24, 1982. Porter argues that the Confirmation was a binding contract by itself and specified all terms of coverage on its face. Since the asbestos-related exclusion itself is not contained on the face of the Confirmation, Porter claims, the exclusion does not apply during that period of time. Porter's argument suggests that since the parties could not agree on the exact wording of the asbestos-related exclusion until later, the exclusion finally agreed to on May 24 did not control from May 1 to May 24. Porter then argues that because asbestos injuries and diseases are occurring anew every day during the coverage period, the coverage attached during the Confirmation period.

Transit argues that the Confirmation was not a contract by itself because IBS, who issued the Confirmation, was not an agent of Transit and had no authority to contractually bind Transit. Transit argues that the policy is the only contract of insurance entered into and that its terms govern all claims made. Transit also argues that the Confirmation, if considered a contract by itself, is subject to, or is superseded by, the policy itself since the Confirmation, on its face, indicates that it is subject to all terms of the policy. We agree with Transit on both aspects.

### IBS Lacked Authority to Bind Transit Without the Broad Asbestos Exclusion

■ Porter argues that IBS possessed "express authority to issue the Confirmation of Insurance on Transit's behalf." However, the evidence, viewed in the light favorable to the trial court decision, does not support this assertion. Rather, the evidence showed that Transit's managing general agent, NUA, never consented to the issuance of any insurance contract without precise wording on an asbestos exclusion.

The testimony of Kenneth Bergquist of IBS included the following:

Q: At the time, do you recall, did you have authority to bind Transit on an insurance—

A: No.

Q: Just to be clear, is it that you don't recall or you didn't have authority to

bind business on behalf of insurance carriers?

A: I clearly remember, we don't have authority to bind business on behalf of insurance carriers.

. . . .

Q: . . . You did not have authority to bind Transit to any particular insurance agreement, including one for H.K. Porter?

A: Correct.

Bergquist, the IBS representative, repeatedly testified that he could not bind Transit without express authority. Because he did not have express authority, there was no proper exercise of his express authority that could give rise to implied authority. He also lacked any apparent authority, as there was no evidence that Transit "by words or conduct held [IBS] out as having [Transit's] authority." Although Bergquist could not remember the details of the specific transaction between Porter and Transit, he explained the usual procedure:

> In the normal course of business, we will communicate to the underwriter we're dealing with and ask him to bind a policy at a certain effective date for a certain amount of premium for a certain limit and terms and conditions, and that is probably reflective of the quote he gave us prior to that time.

> And then, the underwriter would come back to us and say, you know, "Here is our Confirmation of Insurance" or "Here is our binder" and "Here is our policy number."

> And we would get that information from the—either the underwriter from the insurance company or the MGA on behalf of the insurance company.

Bergquist had no specific memory of having authorization from Transit or NUA prior to its issuance. There was evidence that Mr. Kaiser of NUA, Transit's managing general agent, specifically made coverage in this case conditional on the broad asbestos exclusion. The evidence showed that Transit *never* gave its consent for coverage absent a broad asbestos exclusion. This was clear both to IBS and Porter's agent, Rollins, from the start of NUA's involvement. The only type of coverage that Porter could have had from May 1, 1982, onward was coverage with the asbestos exclusion authorized by John Kaiser in his correspondence of April 28, 1982, that confirmed coverage but with the following provision: "**CONDITIONS: EXCLUDE (1) ASBESTOS PRODUCTS/RELATED LOSSES. . . .**"

On April 29, 1982, IBS sent the Confirmation of Insurance to Rollins, which *did not* contain the conditions specified by NUA. On April 30, 1982, John Kaiser of NUA wrote to IBS and stated:

> Per your 4/28/82 memo on asbestos exclusion we agree on your consistency request. However, **we will *not* agree to proposed wording as do not believe all inclusive of an exclusion.** Reportedly, "asbestosis" is only one type of disease associated to prolonged contact with asbestos. Therefore, we feel a "tighter" exclusion needed and so we'll attach to our policy the wording for endt # 1 unless Wausau has something better. (Emphasis added.)

Thus, before May 1, Rollins, Porter's agent, was well aware of the fact that Transit had not approved the asbestosis wording. Rollins then again sent a telex to IBS requesting, in part:

> PLS, SEE IF TRANSIT WILL APPROVE OF FOLLOWING WORDING "IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS UNDERSTOOD AND AGREED THAT THIS POLICY SHALL NOT APPLY TO HEALTH HAZARD CLAIMS

MADE AGAINST THE INSURED ARISING OUT OF ASBESTOSIS RESULTING FROM THE SALE, HANDLING, DISTRIBUTION OR MANUFACTURING BY THE NAMED INSURED OF ASBESTOS OR ANY PRODUCT CONTAINING ASBESTOS."

Rollins' suggested wording was sent to Transit's agent NUA on May 14, 1982. Someone, presumably John Kaiser at NUA, placed a handwritten "NO" on the letter. On May 18, 1982, John Kaiser of NUA sent a telex to IBS, stating:

> Ken—Your 5/14 letter—will not accept this wording as again must repeat asbestosis is only one disease possible from asbestos exposure.

> We will add the following to our policy: IN CONSIDERATION OF THE PREM. CHARGED, IT IS UNDERSTOOD & AGREED THAT THIS POLICY SHALL NOT APPLY TO ANY INJURY, DISEASE, OR ILLNESS ARISING OUT OF THE INHALATION, INGESTION, AND/OR EXPOSURE TO ASBESTOS OR PRODUCTS CONTAINING ASBESTOS SOLD, HANDLED, DISTRIBUTED, PRODUCED AND/OR MANUFACTURED BY THE NAMED INSURED.

Kaiser presented this as a "take it or leave it" proposition, asking that Porter look elsewhere for coverage if NUA's position was unacceptable. IBS passed this information along to Rollins, which, on May 21, 1982, finally accepted the wording Transit had been requesting since April 28, 1982. The insurance policy that issued had the exclusion that Transit requested from the very outset of the negotiations, and continued to insist upon.

Bergquist also admitted that, according to his experience in the industry, the terms of the policy would control over any terms contained in the Confirmation. The Confirmation itself so provides with a provision that "[t]he Insurance is subject to all of the terms and conditions of the ... Policy which may be issued."

### The Parties Agreed to the Broader Exclusion

As we have seen, from late April until May 24, when both parties agreed to and signed the policy, there were ongoing negotiations about the specific wording of the exclusion. Porter wanted an exclusion that excluded only injuries relating to asbestosis. Transit, however, wanted an exclusion that excluded all asbestos-related bodily injuries. Although there were requests and discussions back and forth through Rollins, IBS, and NUA, NUA refused to reconsider Rollins' request for an exclusion limited only to asbestosis. NUA finally, on the 18th of May, invited Porter, if not satisfied with this exclusion, to seek other insurance coverage. On May 21, without further objection, Porter notified Transit that it should issue the policy. Transit issued the policy and both parties signed and agreed to it. The effective date on the policy was May 1, 1982. Thus, there was a meeting of the minds by May 24 when the policy was finally issued at the behest of Porter.

There is no allegation of fraud, illegality, or mistake. The language of the policy itself demonstrates the coverage. The agreement states that it is effective May 1, 1982. Either the policy was the only contract the parties entered into, or the Confirmation was superceded by the actual policy. Either way, by the terms of the policy, coverage began on May 1, 1982, and was subject to all the provisions of the policy, including the asbestos-related exclusion. Porter's first point is denied.

## Whether the Asbestos Companies are Included in "Named Insureds"

■ In its second point of error, Porter claims that the Asbestos Companies are not included as part of the "Named Insured" under the asbestos-related exclusion in the policy. Thus, Porter argues, any claims made against Porter for asbestos-related activities taken before the Asbestos Companies became merged into Porter are not included in the exclusion and should be covered.

We find Porter's argument to be unpersuasive. Porter seems to argue that all the liabilities it assumed from the Asbestos Companies as they were prior to merging with Porter are covered under the policy, but are not subject to the asbestos-related exclusion included in the same policy. In short, it seems that Porter wants to argue that the Asbestos Companies are a part of the "Insured" for purposes of coverage under the policy, but not for purposes of the exclusion under the policy.

If the Asbestos Companies are a part of the "Named Insured" under the policy, they are provided coverage under the policy, but are subject to the asbestos-related exclusion. If the Asbestos Companies are not a part of the "Named Insured" under the policy, they are not provided any coverage under the policy at all. We fail to understand how Porter can successfully separate the two.

Cases which Porter cites in support of its contention that the Asbestos Companies are not subject to the exclusion support only the conclusion that the Asbestos Companies would not be covered under the policy at all. Porter cites *Home Insurance Co. v. Service America Corp.*, 662 F.Supp. 964 (N.D.Ill.1987). The court *Home* in held that because SAC, a subsidiary of the insured (Home), had been sold to another corporation (ABC), SAC was no longer a subsidiary of Home and was not covered under Home's insurance policy.

*Id.* at 966. This case is easily distinguishable because there is no argument made by either party that the Asbestos Companies have been sold to other companies since the issuance of the insurance policy.

Porter also cites *Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.*, 944 F.2d 940 (D.C.Cir.1991). This case is similar to *Home*. The court in *Independent Petrochemical* held that Independent Petrochemical was not a subsidiary of the insured, Signal Oil, because Signal Oil had sold all of Independent Petrochemical's outstanding stock to another company (Charter Oil). 944 F.2d at 947–48. Therefore, Independent Petrochemical was no longer a subsidiary of the insured, Signal Oil, and so not covered under the policy. *Id.* at 948.

Porter suggests that because it had no ties to the Asbestos Companies before they were merged into Porter, they were never subsidiaries of Porter. This contention again would mean only that there should be no coverage for the Asbestos Companies. In other words, if the Asbestos Companies were not part of the "Named Insured," they would not be covered under the policy at all.

Transit does not argue that the Asbestos Companies claims are not covered under the policy and, indeed, this court finds that they are covered. We note that the first policy named "H.K. Porter Company, Inc." as the "Named Insured" as the first item on the first Declarations page of the policy. In interpreting a contract, the goal is to ascertain the intent of the parties as manifested by the language of the written instrument. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106 (1999). Thus, the "Named Insured" would be any part of "H.K. Porter Company, Inc." as shown by the language of the instrument. Because, at the time of the issuance of the policy, the Asbestos Companies had merged into

Porter and Porter had assumed all their assets and liabilities, they were, for all intents and purposes, a part of "H.K. Porter Company, Inc." There is also no doubt that both parties intended to provide coverage for claims arising out of the actions of the Asbestos Companies.

Under Endorsement No. 4 of the first policy, the term "Named Insured" is defined as including "H.K. Porter Company, Inc. and subsidiaries of all and any kinds."[5] Words of common usage, such as "all" or "any" should be read according their natural, plain, and ordinary sense. *Id.* at 108. It appears to us that this language is clear and unambiguous. When language is clear and unambiguous, we must give effect to that language as written. *Id.* at 106. This language further indicates that any and all parts of Porter were included in the coverage of the insurance policy, including the Asbestos Companies.

The Asbestos Companies are included in the exclusion for asbestos-related bodily injuries. Endorsement No. 1 reads, in relevant part, "it is understood and agreed that this policy shall not apply to any injury, disease or illness arising out of the inhalation, ingestion, and/or exposure to asbestos or products containing asbestos sold, handled, distributed, produced and/or manufactured by the Named Insured." Since the Asbestos Companies are included in the "Named Insured," they are also included in the exclusion.

This exclusion is clear and unambiguous. Although Porter and Transit disagree about the meaning of the term "Named Insured" in the exclusion, the mere fact that the parties do not agree on the meaning of the exclusion does not make it ambiguous. *Lexington Ins. Co. v. W. Pa. Hosp.*, 318 F.Supp.2d 270, 273 (W.D.Pa.

2004). Porter's reading of the insurance contract is unreasonable. An unreasonable interpretation of a contract does not create an ambiguity where none exists. *Id.*

Because it is clear and unambiguous that the Asbestos Companies were included as part of the "Named Insured" when the contract was created, and because the asbestos-related exclusion specifically refers to the "Named Insured," we find that the Asbestos Companies were covered under the policy in the same manner as the rest of Porter. That is, they were covered for all losses and liabilities except asbestos-related bodily injuries. Thus, Porter's second point is denied.

## Conclusion

For all of the foregoing reasons, the judgment of the trial court is affirmed.

**5.** In the second policy, there was no Endorsement No. 4. Instead the "Named Insured" was defined in the Declarations Section, Item 1, as "H.K. Porter Company, Inc. and subsidiaries of all and any kinds." Thus, the same reasoning applies to the second policy.