[947 NE2d 1174, 923 NYS2d 396]

In the Matter of the Liquidation of MIDLAND INSURANCE COMPANY. AMERICAN STANDARD INC. et al., Appellants, et al., Claimants; SWISS REINSURANCE AMERICA CORPORATION et al., Intervenors-Respondents, and SUPERINTENDENT OF INSURANCE OF THE STATE OF NEW YORK, as Liquidator of Midland Insurance Company, et al., Respondents.

Argued February 9, 2011; decided April 5, 2011

## POINTS OF COUNSEL

*Eckert Seamans Cherin & Mellott, LLC* (*David J. Strasser*, of the Pennsylvania bar, admitted pro hac vice, and *Erin W. McDowell*, of the Pennsylvania bar, admitted pro hac vice, of

counsel), and *Eckert Seamans Cherin & Mellott, LLC*, White Plains (*Steven R. Kramer* of counsel), for CBS Corporation, *K&L Gates LLP* (*David F. McGonigle*, of the Pennsylvania bar, admitted pro hac vice, and *Scott A. Bowan*, of the Pennsylvania bar, admitted pro hac vice, of counsel), for American Standard Inc., *Gilbert LLP* (*David B. Killalea*, of the District of Columbia bar, admitted pro hac vice, and *Jonathan M. Cohen*, of the District of Columbia bar, admitted pro hac vice, of counsel), for Babcock & Wilcox Company Asbestos PI Trust and others, *Pillsbury Winthrop Shaw Pittman LLP*, New York City (*Kerry A. Brennan* of counsel), and *Dughi & Hewit, P.C.* (*Russell L. Hewit*, of the New Jersey bar, admitted pro hac vice, and *Scott A. Hall*, of the New Jersey bar, admitted pro hac vice, of counsel), for Congoleum Corporation, appellants. I. Midland Insurance Company's insolvency does not change which state's law applies to its policies. (*Matter of Union Indem. Ins. Co. of N.Y.*, 89 NY2d 94; *Matter of Transit Cas. Co. [Digirol—Superintendent of Ins.]*, 79 NY2d 13; *Transit Commn. v Long Is. R.R. Co.*, 253 NY 345.) II. Even if Midland Insurance Company's insolvency could be considered in the choice-of-law analysis, Midland's insolvency does not give New York a paramount interest in applying its own law to every Midland policy. (*Matter of Dinallo v DiNapoli*, 9 NY3d 94; *Morris v Jones*, 329 US 545; *In re Columbia Ribbon Co.*, 117 F2d 999.) III. The premise of *Matter of Midland Ins. Co.* (269 AD2d 50 [2000]), that New York law must be applied to all claims so that "all creditors" are "treated equally," finds no support in New York law. (*Skandia Am. Reins. Corp. v Schenck*, 441 F Supp 715; *Matter of People*, 249 NY 139; *Pink v Title Guar. & Trust Co.*, 274 NY 167; *Bohlinger v Zanger*, 306 NY 228; *Matter of Transit Cas. Co. [Digirol—Superintendent of Ins.]*, 79 NY2d 13; *Matter of Knickerbocker Agency [Holz]*, 4 NY2d 245.) IV. *Matter of Midland Ins. Co.* (269 AD2d 50 [2000]) is not binding as precedent or law of the case. (*Rager v McCloskey*, 305 NY 75; *Kaufman v Eli Lilly & Co.*, 65 NY2d 449; *People v Evans*, 94 NY2d 499; *Green v Santa Fe Indus.*, 70 NY2d 244; *People v Hobson*, 39 NY2d 479.)

*New York Liquidation Bureau*, New York City (*David Axinn, John Pearson Kelly* and *Judy H. Kim* of counsel), for respondents. I. New York law applies to Insurance Law article 74 liquidation proceedings. (*Certain Underwriters at Lloyd's, London v Foster Wheeler Corp.*, 36 AD3d 17; *Auten v Auten*, 308 NY 155; *Zurich Ins. Co. v Shearson Lehman Hutton*, 84 NY2d 309; *Matter of Knickerbocker Agency [Holz]*, 4 NY2d 245; *Corcoran v Hall & Co.*, 149 AD2d 165; *Matter of Dinallo v DiNapoli*,

9 NY3d 94; *People v Globe Mut. Life Ins. Co.*, 91 NY 174; *Matter of Bean v Stoddard*, 207 App Div 276, 238 NY 618; *Moscow Fire Ins. Co. v Bank of N.Y. & Trust Co.*, 280 NY 286; *First Natl. Bank of Saratoga Springs v Rock City Falls Paper Co.*, 22 Misc 599.) II. New York public policy requires the application of New York law to ensure that assets in an Insurance Law article 74 proceeding are distributed in accordance with New York principles of equity and fairness. (*Zurich Ins. Co. v Shearson Lehman Hutton*, 84 NY2d 309; *Matter of Knickerbocker Agency [Holz]*, 4 NY2d 245; *Law Enforcement Ins. Co. v Corcoran*, 807 F2d 38; *Burford v Sun Oil Co.*, 319 US 315; *Keen Corp. v Insurance Co. of N. Am.*, 667 F2d 1034; *Matter of Allcity Ins. Co. [Kondak]*, 66 AD2d 531; *Matter of Dinallo v DiNapoli*, 9 NY3d 94.) III. The Appellate Division's holding in *Matter of Midland Ins. Co.* (269 AD2d 50 [2000]) is binding on all claimants in the Midland Insurance Company liquidation proceeding. (*Kimmel v State of New York*, 261 AD2d 843; *Rosen v Massachusetts Acc. Co.*, 282 NY 447; *Matter of People*, 249 NY 139; *Matter of Emmet [Empire State Sur. Co.]*, 214 NY 553; *Presbrey v Presbrey*, 6 AD2d 477, 8 NY2d 797.)

*Simpson Thacher & Bartlett LLP*, New York City (*Barry R. Ostrager, Mary Kay Vyskocil* and *Jeffrey Coviello* of counsel), for Swiss Reinsurance America Corporation and others, and *Crowell & Moring LLP*, New York City (*Harry P. Cohen, Paul W. Kalish* and *Leslie A. Davis* of counsel), for Everest Reinsurance Company, intervenor-respondents. I. The Appellate Division correctly held that New York choice-of-law principles require application of New York law to the policyholder claims at issue in Midland Insurance Company's New York liquidation. (*Auten v Auten*, 308 NY 155; *Zurich Ins. Co. v Shearson Lehman Hutton*, 84 NY2d 309; *Schwartz v Liberty Mut. Ins. Co.*, 539 F3d 135; *Kaszak v Liberty Mut. Ins. Co.*, 192 Misc 2d 168; *Allen v Village of Farmingdale*, 282 AD2d 485; *Certain Underwriters at Lloyd's, London v Foster Wheeler Corp.*, 36 AD3d 17; *Fireman's Fund Ins. Co. v Schuster Films, Inc.*, 811 F Supp 978; *Walter E. Heller & Co. v Video Innovations, Inc.*, 730 F2d 50; *Babcock & Wilcox Co. v Arkwright-Boston Mfg. Mut. Ins. Co.*, 867 F Supp 573; *Flintkote Co. v General Acc. Assur. Co. of Can.*, 410 F Supp 2d 875.) II. *Certain Underwriters at Lloyd's, London v Foster Wheeler Corp.* (36 AD3d 17 [2006]) does not overrule *Matter of Midland Ins. Co.* (269 AD2d 50 [2000]) or conflict with the decision on appeal. (*Zurich Ins. Co. v Shearson Lehman Hutton*, 84 NY2d 309; *Auten v Auten*, 308 NY 155; *Matter of Eagle Ins. Co. v Singletary*, 279 AD2d 56.) III. The Appellate Division correctly

held that the trial court was bound by *Matter of Midland Ins. Co.* (269 AD2d 50 [2000]) and there is no reason for this Court to disturb that decision. (*Misicki v Caradonna*, 12 NY3d 511; *People v Hobson*, 39 NY2d 479; *Red Tulip, LLC v Neiva*, 44 AD3d 204; *Ernie Otto Corp. v Inland Southeast Thompson Monticello, LLC*, 53 AD3d 924; *Agee v Ajar*, 154 AD2d 569; *Matter of Knickerbocker Agency [Holz]*, 4 AD2d 71; *Briggs v Chapman*, 53 AD3d 900; *Green v Sante Fe Indus.*, 70 NY2d 244.)

### OPINION OF THE COURT

CIPARICK, J.

In this choice-of-law dispute between policyholders and the New York State Liquidation Bureau, the question presented is whether the insurance policies issued by Midland Insurance Company (Midland) must be interpreted under New York substantive law because Midland has been adjudged insolvent and placed into liquidation in New York. We conclude that New York law need not apply and hold that for each Midland policy in dispute an individual choice-of-law analysis must be conducted to determine which jurisdiction's law should govern.

I.

Headquartered in Lower Manhattan, Midland was incorporated under New York law in October 1959 as a stock casualty insurer. Its charter authorized Midland to conduct business throughout the United States and in Canada. Midland carried multiline insurance, a type of insurance that typically bundles together different exposures to risks. During its existence, Midland transacted with Fortune 500 companies nationwide, underwriting a substantial amount of excess coverage policies.

In 1985, the New York State Insurance Department (the Insurance Department) commenced an investigation into Midland's financial condition. The Insurance Department's analysis of Midland's financial condition revealed that the company's liabilities exceeded its assets. On March 7, 1986, the Insurance Department warned Midland that it would seek an order placing Midland into receivership if Midland was unable to get its financial affairs in order. Midland could not comply with the Insurance Department's directives and, by a unanimous vote of its board of directors, consented to liquidation.

By order dated April 3, 1986 (the Liquidation Order), Supreme Court adjudged Midland insolvent and placed it into liquidation pursuant to article 74 of the New York Insurance

Law. As of this date, Midland's financial records showed that its assets totaled approximately $307 million while its liabilities totaled approximately $354 million, making it insolvent by about $47 million. The Liquidation Order authorized the Superintendent of the Insurance Department (the Liquidator) to take possession of Midland's property and to sell or otherwise dispose of it at the best obtainable price.

Following the entry of the Liquidation Order in Supreme Court, the Liquidator began the statutorily mandated process of notifying all persons with potential claims against Midland. To that end, the Liquidator mailed out over 38,000 proof of claim forms to known Midland policyholders, and other creditors. In addition to providing Midland's policyholders and creditors with notice of Midland's insolvency, the Liquidator informed them of their obligation to present their claims by filing the requisite proof of claim forms with the Insurance Department no later than April 3, 1987.[1]

Article 74 of the Insurance Law vests the Liquidator with the authority to review these submitted claims and make recommendations to Supreme Court on what claims should be allowed or disallowed. Claims approved by Supreme Court are entitled to a share in Midland's estate while disallowed claims are not. By order dated March 15, 1994, Supreme Court established the procedure for the disallowance of claims. The order provided that the Liquidator must send a "Notice of Recommendation of Disallowance" (NOD) to those policyholders whose claims have been recommended for disallowance. The order also permitted anyone who received a NOD to file a written objection with the Liquidator within 60 days of the posted NOD date. Objections to the NOD timely received would be referred to a Supreme Court appointed referee who would review and conduct hearings on the disputed claims.

Claimants in this appeal (Major Policyholders) are among the corporate policyholders, headquartered in various states, who have timely submitted proof of claims to the Liquidator. The Major Policyholders have asserted claims against Midland for coverage stemming from exposure to, among other things, asbestos, environmental pollution, product liability, and other toxic torts. They seek to recover a significant percentage of the

---

1. The Liquidator was unable to identify every Midland creditor prior to the filing deadline. Creditors who returned their proof of claim forms after the filing deadline, but within four months of the Liquidator's mailing, were deemed to have timely filed.

billions of dollars at stake in this liquidation proceeding. Subsequent to the Major Policyholders' submission of their proof of claims against Midland, the Liquidator determined that some of their claims should be disallowed. Accordingly, the Liquidator furnished the Major Policyholders with NODs in compliance with the court-ordered procedure, and, in turn, the Major Policyholders filed timely objections.

In 2006, the Liquidator, the Major Policyholders, and Midland's reinsurers approached Supreme Court to address their disagreement concerning the Liquidator's decision to disallow certain of the Major Policyholders' claims. One of the disputes between the parties centered on the Liquidator's decision to exclusively apply substantive New York law in making its determination to disallow certain claims of the Major Policyholders. The Liquidator predicated its decision to apply New York law on the Appellate Division's decision in *Matter of Midland Ins. Co.* (269 AD2d 50 [1st Dept 2000] [*Midland LAQ*]). The Major Policyholders disputed the precedential value of the holding in *Midland LAQ* and argued that, under New York law, the Liquidator cannot legitimately disallow claims without first engaging in a choice-of-law analysis to determine the substantive state law that applies to each policy.

As a result, the parties requested that Supreme Court resolve this issue. Consequently, during the spring of 2006, the parties negotiated and agreed upon a proposed case management order. Supreme Court so-ordered the document, entitled "Stipulation and Case Management Order" (CMO), on July 31, 2006. The CMO set forth a procedure to resolve the legal disputes between the parties, dividing the legal issues into two phases. The legal issue posed by phase I of the CMO, which is the subject of this appeal, is "whether New York substantive law governs the interpretation and application of Midland insurance policies at issue in this litigation or whether [Supreme Court] must conduct an analysis utilizing the New York choice-of-law test to determine which jurisdiction's or jurisdictions' law(s) apply."

After reviewing memoranda of law submitted by the parties, Supreme Court agreed with the Major Policyholders that the Liquidator erred in automatically applying New York substantive law to every claim submitted. The court held that *Certain Underwriters at Lloyd's, London v Foster Wheeler Corp.* (36 AD3d 17 [1st Dept 2006], *affd for reasons stated below* 9 NY3d 928 [2007]) obligated the Liquidator to conduct a threshold analysis of each Midland policy to determine the applicable

substantive state law according to the "grouping of contacts" approach of the Restatement (Second) of Conflict of Laws. The court observed:

> "On this motion, it cannot be determined whether analysis of the [Major Policyholders'] denied claims under the Restatement's 'grouping of contacts' approach would have resulted in allowances of their claims. It may be possible for the [L]iquidator to defend his denial of the [Major Policyholders'] claims even when applying the Restatement's approach. This must be determined on a claim-by-claim basis." (20 Misc 3d 488, 507 [2008].)

The Appellate Division reversed the order of Supreme Court (*Matter of Midland Ins. Co.*, 71 AD3d 221 [1st Dept 2010]). The court concluded that its prior decision in *Midland LAQ*, which stood for the proposition that "New York law must apply to all claims in a liquidation proceeding," was the law of the case and binding on Supreme Court (*id.* at 226). The court distinguished *Foster Wheeler* from its holding in *Midland LAQ* noting that *Foster Wheeler* "involved contract claims against a solvent insurer" (*id.*). The court reasoned that New York law must apply to the claims in a liquidation proceeding because New York has a "paramount state interest" in ensuring that the Liquidator makes "distributions from an insolvent insurer's estate" in an equitable manner (*id.*). To interpret "Midland's policies under the laws of more than one state," the court held, "would run afoul" of Insurance Law § 7434 (a), which proscribes the creation of "subclasses among the policyholders-creditors" (*id.* at 227).

On April 29, 2010, the same panel of the Appellate Division granted the Major Policyholders leave to appeal to this Court and certified a question inquiring whether its order, which reversed the order of Supreme Court, was "properly made." We now reverse and answer the certified question in the negative.

## II.

It is well settled that New York has long recognized "the use of 'center of gravity' or 'grouping of contacts' as the appropriate analytical approach to choice of law questions in contract cases" (*Zurich Ins. Co. v Shearson Lehman Hutton*, 84 NY2d 309, 317 [1994]; *see also Auten v Auten*, 308 NY 155, 160-161 [1954]). "The purpose of grouping contacts is to establish which State has 'the most significant relationship to the transaction and the

parties' '' (*Zurich*, 84 NY2d at 317, quoting Restatement [Second] of Conflict of Laws § 188 [1]). In *Auten*, we held that application of the "grouping of contacts" theory to choice-of-law disputes "gives . . . the place having the most interest in the problem paramount control over the legal issues arising out of a particular factual context, thus allowing the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of the particular litigation" (308 NY at 161 [internal quotation marks, brackets and citation omitted]). In the context of liability insurance contracts, the jurisdiction with the most "significant relationship to the transaction and the parties" will generally be the jurisdiction "which the parties understood was to be the principal location of the insured risk . . . unless with respect to the particular issue, some other [jurisdiction] has a more significant relationship" (*Zurich*, 84 NY2d at 318, quoting Restatement [Second] of Conflict of Laws § 193).

We recently affirmed the Appellate Division's application of these principles in *Foster Wheeler*. In that case, Foster Wheeler Corporation sought a declaratory judgment for an apportionment of the defense and indemnity costs associated with various asbestos-related personal injury claims from its insurers (*Foster Wheeler*, 36 AD3d at 19). "[T]he insurance policies in question cover[ed] risks that [were] spread through multiple states" (*id.* at 22) and the parties disputed whether New York or New Jersey law should apply when interpreting those policies (*see id.* at 21).

In applying New York's "grouping of contacts" approach to choice-of-law questions, the Appellate Division concluded "where it is necessary to determine the law governing a liability insurance policy covering risks in multiple states, the state of the insured's domicile should be regarded as a proxy for the principal location of the insured risk" (*id.* at 24; *see also Steadfast Ins. Co. v Sentinel Real Estate Corp.*, 283 AD2d 44, 50 [3d Dept 2001] [where insurance policy at issue covered risks stemming from "the nationwide scope of (the insured's) operations, the principal location of the insured risk should be deemed to be the state where (the insured) is incorporated and has its principal place of business"]). The Appellate Division observed that this approach promotes "certainty, predictability and uniformity of result" (Restatement [Second] of Conflict of Laws § 6 [2] [f]) in that "[t]he state of the insured's domicile is a fact known to the parties at the time of contracting, and (in the absence of a contractual choice-of-law provision) application of the law of that state is most likely to conform to their expectations" (*Foster Wheeler*, 36 AD3d at 23).

The Liquidator and the reinsurers do not quarrel with the holding in *Foster Wheeler*, but argue that the choice-of-law principles pronounced there are inapplicable to this case since Midland is in liquidation, having been adjudged insolvent in New York. They contend that article 74 of the Insurance Law abrogates the "grouping of contacts" approach to choice-of-law questions and requires the Liquidator to uniformly evaluate the claims submitted by the Major Policyholders under New York law. We find no statutory support for their position.

Our analysis of article 74 of the Insurance Law begins with section 7432 (b), which provides: "Where a liquidation, rehabilitation or conservation order has been entered in a proceeding against an insurer under this article, all persons who may have *claims against such insurer* shall present *the same* to the liquidator" (emphasis added). Here, the claims of the Major Policyholders derive from the insurance policies issued by Midland prior to its insolvency. There can be no doubt that, if solvent, Midland and the Major Policyholders would have engaged in a "grouping-of-contacts" analysis to determine which jurisdiction's laws govern the claims submitted. We see no reason why the Liquidator and the Major Policyholders should be precluded from engaging in the same choice-of-law analysis simply because Midland has been adjudged insolvent in New York.

Indeed, we find further support for our conclusion that choice-of-law principles continue to apply once an insurer has been adjudged insolvent in Insurance Law § 7433 (a). That statute, which governs the proof and allowance of claims submitted by an insured, states, in part: "A proof of claim shall consist of a written statement . . . setting forth the claim, the consideration therefor, any securities held therefor, any payments made thereon, and that the *sum claimed is justly owing from the insurer to the claimant*" (*id.* § 7433 [a] [1] [emphasis added]). We interpret "justly owing" to mean the amount Midland would have been obligated to pay its Major Policyholders had it remained solvent. Thus, determining the "sum" of a claim "justly owing from the insurer" invariably requires a choice-of-law analysis because the methodology of calculating an insured's loss can differ from one jurisdiction to the next (*see e.g. Foster Wheeler*, 36 AD3d at 20-21 [New Jersey's "mathematical method of effecting a pro rata allocation of an insured loss over the period of its occurrence . . . would make tens of millions of dollars more coverage available" to the insured than New York's method]).

Furthermore, there is nothing in the provisions of section 7433 (a) setting forth what claims "may be allowed" which requires that substantive New York law must apply in computing their value. Accordingly, we hold that a blanket application of New York law to Midland's policies would frustrate the statutory mandate requiring the submission and allowance of claims by the Liquidator "justly owed" to the Major Policyholders.

Moreover, we reject the argument that an individual choice-of-law analysis on each of Midland's policies would create "subclasses" among the Major Policyholders in violation of Insurance Law § 7434 (a) (1). Section 7434 (a) (1) merely governs the distribution of assets in a liquidation proceeding, not the allowed sum, and its reference to "subclasses" has no bearing on whether choice-of-law principles should apply to the valuation of the Major Policyholders' claims. The statute, in relevant part, provides:

> "distribution payments shall be made in a manner that will assure the proper recognition of priorities and a reasonable balance between the expeditious completion of the liquidation and the protection of unliquidated and undetermined claims. The priority of distribution of claims . . . shall be in accordance with the order in which each class of claims is set forth in this paragraph . . . Every claim in each class shall be paid in full or adequate funds retained for such payment before the members of the next class receive any payment. *No subclasses shall be established within any class*" (*id.* [emphasis added]).[2]

The purpose in including language proscribing the creation of "subclasses" is to ensure that members within a particular class are not given priority vis-à-vis one another in terms of distribution. This proscription becomes particularly important where there are insufficient funds to pay 100% of the allowed claims within a particular class as is the case here. In that situation, by eliminating the establishment of "subclasses," the statute requires that the liquidator pay each member of the same class a pro rata share of the remaining assets from the liquidated estate (*see In re Columbia Ribbon Co.*, 117 F2d 999, 1002 [3d Cir 1941] [In the context of a federal bankruptcy

---

2. Insurance Law § 7434 designates nine classes of claimants for asset distribution purposes. The parties do not dispute that the Major Policyholders are in "class two."

proceeding, "(i)t does not hold that (a) court may set up a sub-classification of claims within a class given equal priority by the Bankruptcy Act"]).

Thus, the proscription against formulating "subclasses" in the distribution phase of a liquidation does not require that the Liquidator apply substantive New York law to all the claims submitted by the Major Policyholders. Rather, we conclude that article 74 of the Insurance Law recognizes that the allowance of claims and the distribution of the liquidated assets are two separate functions. While the statute is explicit in defining which classes of claimants receive priority for distribution purposes (*see* Insurance Law § 7434 [a] [1] [i]-[ix]), it does not address choice of law at the valuation stage. If the Legislature intended for substantive New York law to apply to every claim submitted by policyholders at the allowance phase, it would have said so.

On this point, we note that the claims submitted by the Major Policyholders are rooted in common-law principles of contract. It is axiomatic that "[r]ules of the common law are to be no further abrogated than the clear import of the language used in the statute" (*Transit Commn. v Long Is. R.R. Co.*, 253 NY 345, 355 [1930]; *see* McKinney's Cons Laws of NY, Book 1, Statutes § 301 [a], [b]). Here, since there is no provision in article 74 of the Insurance Law that suggests otherwise, we conclude that the Major Policyholders are entitled to an evaluation of their claims by the Liquidator under the same common-law choice-of-law principles that clearly applied to their claims prior to Midland's insolvency.

Notably, we are not the only court to arrive at this determination. In *Viacom, Inc. v Transit Cas. Co.* (138 SW3d 723 [Mo 2004]), the Missouri Supreme Court rejected a similar argument that Missouri law should govern all insurance policies issued by an insolvent Missouri insurer, regardless of which state's law would have applied to those policies prior to its insolvency (138 SW3d at 726). Rather, the court held that the insurer's insolvency did not change its coverage obligations, which continued to be governed by the law of the state that the parties knew was controlling at the time of contracting (*see id.*). Moreover, the Missouri Supreme Court observed that its insurer insolvency laws did not address choice of law and therefore Missouri's pre-insolvency choice-of-law principles continued to govern the insurance policies at issue. "Where the insolvency code is silent, courts apply the common law" (*id.*; *see generally* McKinney's Statutes § 301 [a], [b]). Finally, even if we were to

accept respondents' argument that, under stare decisis and law of the case principles, the Appellate Division's holding in *Midland LAQ* was binding on Supreme Court as it arose out of the same liquidation proceeding, the ruling of a lower court, of course, is "not binding upon this [C]ourt" (*Rager v McCloskey*, 305 NY 75, 78 [1953]). To the extent that *Midland LAQ* stands for the proposition that New York substantive law must apply to all claims in the Midland liquidation, that holding, for the reasons stated herein, is no longer good authority.

Accordingly, the order of the Appellate Division should be reversed, with costs, the order of Supreme Court reinstated, and the certified question answered in the negative.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order reversed, etc.